## L. H. PUCKETT V. ED HOOVER, JR., ET AL.

No. A-1158. Decided May 21, 1947.
(202 S. W., 2d Series, 209.)

*Morgan, Coulton, Morgan & Britian,* of Amarillo, *Boyer, McConnell & Hankins,* of Perryton, for petitioner, L. H. Puckett.

*Ed Hoover, Jr., Hoover, Hoover & Cussen,* all of Canadian, for respondents, Ed Hoover, Jr., and Miss Henson.

MR. JUSTICE SIMPSON delivered the opinion of the Court.

L. H. Puckett, the petitioner here, agreed to purchase one-half the minerals in a section of land in Lipscomb and Ochiltree Counties from Ed Hoover, Jr., and Miss Evaleen Henson, the respondents, for $1,850.00 cash. On July 2, 1945, Puckett handed the respondents a draft on himself for this sum and the respondents handed him an executed deed. The draft reads:

"AMARILLO NATIONAL BANK

"On or before 30 days from date and approval of title as full consideration for one-half minerals under sec. 470, H. & T. C. Ry. Co., Block 43.

"Amarillo, Texas, July 2, 1945.

"Pay to the order of Ed Hoover, Jr., and Evaleen Henson, $1850.00 "Eighteen Hundred Fifty and No/100 Dollars.

"To L. H. Puckett,
"Amarillo Nat'l Bank, Amarillo, Txas.

"(Signed) L. H. Puckett."

The parties disagree as to what happened next. The respondents' version is that Puckett saw them on July 3, 1945, and said he had just come from the county seat town of Lipscomb where he had found that respondents "conveyed this land away in 1926," that they did not "own it" and that "the deal was off." The petitioner's version is that he investigated the records, found the respondents owned only one-fourth of the minerals, and informed them that "they didn't own this interest"; that

Hoover told him the conveyance of 1926 which reduced respondents' interest to one-fourth was in effect a mortgage and should not have been recorded," that Hoover would "get it straightened up and delivered," and upon this representation Puckett waited until October for the respondents to perfect their title, which they did not do. Then, Puckett contends, he concluded to accept title to the one-fourth interest which respondents did own, with a proportionate reduction of the consideration, and so filed the deed for record.

The respondents sued Puckett to quiet title to one-half minerals in the land in question, and by cross action Puckett sought to quiet the title in himself to one-fourth of the minerals, tending into court one-half the original consideration. Tried to the court without a jury, the judgment was in favor of Hoover and Miss Henson.

The Court of Civil Appeals reversed the judgment because of the error of the trial court "in holding that because the parties had contracted with reference to one-half of the minerals the appellant could not elect to take and pay for one-fourth of them upon the failure of appellees' title to the other fourth," and remanded the cause for a new trial because the lower court had refused to make a finding upon the issue of whether Puckett rejected title and terminated the contract of purchase on July 3, 1945, as the respondents contend. 197 S. W. (2d) 602, 604.

■ This writ of error was granted upon petitioner's point that: "The Court of Civil Appeals erred in holding that the delivery of the deed by respondents to petitioner, the grantee named herein, was not effectual to pass title." In granting the writ we inclined to the view that the challenged holding would trench upon the well-settled rule that there can be no delivery of a deed in escrow to the grantee. This principle is stated in 7 Thompson, Real Property (permanent ed.) sec. 4196:

"The delivery of a deed in escrow may not be made to the grantee. The depositary must be a stranger. If the delivery be to the party to whom it is made, though upon express condition, not appearing upon the face of the deed, that it is to take effect only upon certain conditions, whatever may be the form of words, the delivery is absolute and the deed takes effect immediately."

Chief Justice Stayton applied this rule in Heffron v. Cunningham, 76 Texas 312, 13 S. W. 259, and it has been consistently

followed in this jurisdiction since that decision, the latest expression on the point being found in Denman v. Hall, 144 Texas 633, 193 S. W. (2d) 515. Also see 14 Tex. Jur., Deeds, sec. 61; 17 Tex. Jur., Escrow, sec. 7.

But further appraisal of the record leads to the conclusion that the Court of Civil Appeals did not in any way qualify this principle. There was no attempt in this case to deliver the deed to petitioner in escrow. Indisputably, what the parties did was to make an executory contract to the effect that Puckett would buy one-half the minerals in question at the agreed price if he found the title was good. He certainly never accepted the deed with the intent that it pass title to him presently. To the contrary, the stipulations in the draft that he handed the respondents necessarily imply that he had thirty days within which to approve the title. This draft effectively protected Puckett against paying for the property if he disapproved the title, since Hoover and Miss Henson could never have collected on the draft, drawn as it was upon Puckett himself, without the latter's acceptance. Moreover, it is undisputed that immediately after the exchange of the instruments Puckett went about investigating the record title and on the following day made a report to the respondents of what he had found. Of course the contemporaneously exchanged draft and deed should be construed together. 16 Am. Jur., Deeds, sec. 175. The Court of Civil Appeals correctly announced that:

"He [the district judge] properly held that the instruments and their simultaneous exchange exhibited the intention of the parties that the deed was handed to appellant for the purpose of placing it in his possession pending his decision to accept it. The acceptance was conditioned upon his approval of the title. The handing of a deed to a grantee for retention by him, pending his determination to accept it, does not constitute delivery." 197 S. W. (2d) 602, 604.

The distinction between delivering a deed in escrow to the grantee and entrusting the manual possession to him without the intention necessary to constitute a delivery has been criticized as somewhat fine by one eminent writer. 1 Williston, Contracts (rev. ed.) sec. 212. Nevertheless, the distinction exists in this jurisdiction and appears to rest upon grounds which are quite tangible and reasonable. Bell v. Rudd, 144 Texas 491, 191 S. W. (2d) 841.

■ The law of delivery of deeds comprehends, among its many elements, an acceptance by the grantee. One should not be

obliged to accept an estate without his consent and contrary to his wishes. Precisely, the law as it applies to Puckett's situation is thus written in 26 C. J. S., Deeds, sec. 51:

"Where the grantee imposes certain conditions precedent to acceptance, title does not pass under the deed until the fulfilment of such conditions; and there is only a conditional acceptance where the purchaser at the time of the execution and delivery of the contract of sale receives a deed, not with the intention of having title vest at that time, but with the intention of retaining the deed and having title vest if the abstract shows a merchantable title."

See also 16 Am. Jur., Deeds, sec. 153; 7 Thompson, Real Property (permanent ed). secs. 4116 and 4145.

So the conclusion necessarily follows from all the facts that Puckett had no intention of accepting the estate described in the conveyance unless he approved the title. Accordingly, there was no completed delivery of the deed when the parties exchanged it and the draft on July 2, 1945. Whether Puckett disapproved the title and withdrew his proposal to purchase on July 3, 1945, as he would have had the right to do and as respondents contend he did so, or whether the respondents and Puckett agreed to let the proposal to purchase remain in effect until the respondents could cure the defect in the title, as Puckett contends, are questions of fact which have not been determined by the district court, and a remand of this cause for a new trial is accordingly required.

But the respondents contend that the exchange of the deed and the draft amounted to a contract of purchase and sale, that time was of the essence of this contract, and that the mutual commitments of the parties were at an end when the thirty days specified in the draft expired. However, Puckett's contention was that when he told Hoover about the outstanding interest, the latter expressed the belief that he could "get it back," and for this reason the deal was not consummated in thirty days but "dragged along" for three months, with Hoover representing all along that he was making an effort to get the full interest and Puckett saying, "If you get it, I want it." So it does not necessarily follow that when the thirty days expired the rights and responsibilities of the parties were at an end. If the trial court should find the facts in favor of Puckett's version, there would be an effectual waiver of any requirement

that the purchase be completed within the thirty-day period. As stated in 66 C. J., Vendor and Purchaser, sec. 259:

"Although time is of the essence of the contract, a strict performance may be waived by the parties entitled to insist on it, even where time is of the essence by express stipulation in the contract itself, and such waiver may be either in writing or by parol."

See also 43 Tex. Jur., Vendor and Purchaser, sec. 91.

The asserted waiver not only may be shown by parol, but may be made to appear from the circumstances or course of dealing. 43 Tex. Jur., Waiver, sec. 8.

Respondents rely on Baker v. Fell, 135 Texas 375, 144 S. W. (2d) 255, and like authorities involving vendor and purchaser contracts where there were specified time limits which had not been waived or extended. For instance, in Baker v. Fell the parties contracted that an agreement they had made should be void if a certain loan was not approved within fifteen days. The approval was not timely secured and the contract was held to have expired by its own provisions. In that case no contention was advanced that the stipulated time limit was extended either by agreement (as in Langley v. Norris, 141 Texas 405, 173 S. W. (2d) 454, 148 A. L. R. 555) or by waiver. Neither this nor the other authorities cited by respondents are applicable here.

The respondents also contend that there was a mutual mistake of fact when the parties entered into the agreement on July 2, 1945, in that both erroneously assumed the respondents owned one-half the minerals under the section of land in question. The Court of Civil Appeals correctly held that this misapprehension would not afford the respondents ground for relief, declaring in this connection that:

"The vendor is ordinarily presumed to know the quantity, character and quality of the land which he owns and offers for sale. [Citing authorities.] The evidence indicates that the appellees had at one time owned an undivided one-half interest in the minerals and had conveyed, prior to the transaction with appellant, one-fourth of them to a third party. Certainly, appellant was not responsible for appellees' mistake in believing that they owned one-half of the minerals in the land and appellant should not be penalized for appellees' forgetfulness.

Appellant had the right to have the contract enforced to the extent that appellees could perform with a corresponding abatement in the purchase price." 197 S. W. (2d) 602, 604.

The judgment of the Court of Civil Appeals is affirmed.

Opinion delivered May 21, 1947.

No motion for rehearing filed.