AMERICAN MANUFACTURING COMPANY OF TEXAS, Appellant,

v.

Madelyn H. WITTER et al., Appellees.

No. 16194.

Court of Civil Appeals of Texas.

Fort Worth.

Feb. 24, 1961.

Simon & Simon, and Richard U. Simon, Fort Worth, for appellant.

Hudson, Keltner, Jordan & Cunningham, Dale B. Hinson and Walter E. Jordan, Fort Worth, for appellees.

RENFRO, Justice.

Certain hereinafter named plaintiffs sued American Manufacturing Company for royalties allegedly due under a sublicense agreement originally executed July 22, 1941, between S. F. Keener and American for the manufacture of closed-end ordnance projectiles. Based on a jury verdict, judgment was entered for plaintiffs for a total sum of $34,385.01, representing royalties and interest for the years 1953, 1954 and 1955.

Appellant, in the trial court and on appeal, contends the plaintiffs could not recover because there was no privity between them and appellant, and they had no contractual right against appellant for their respective portions of the royalties. Plaintiffs were Madelyn H. Witter, Bernice M. Keener, Patricia Keener Butler, John F. Keener, H. W. Eddy and The Timken Roller Bearing Company. S. F. Keener died before the suit was filed. Prior to the execution of the contract with appellant, Keener had executed a contract with C. A. Witter under the terms of which Witter was to receive a certain percentage of any royalties paid to Keener by any sublicensee of Keener. Plaintiff Madelyn Witter is the surviving widow of Witter. Plaintiff Timken, prior to Keener's contract with appellant, had granted Keener exclusive license to use certain inventions of patents mentioned in the contract for which Timken was to receive a designated percentage of royalties. The Timken-Keener agreement was mentioned in the Keener-appellant license agreement. Appellant paid no royalties to anyone for the years for which plaintiffs were allowed recovery. Appellant does not claim that the recovery allowed the above two plaintiffs was or could be claimed by anyone else. The other plaintiffs claim under assignments made under the Timken contract by Keener before his death. It is appellant's position that Keener could not assign his interest in the Timken contract to anyone else. The Timken-Keener agreement provided: "This agreement shall be binding upon and shall inure to the benefit and advantage of the successors and legal representatives of the parties and the assigns of Timken. It is understood that Keener is now contemplating the incorpora-

tion of a company to which is to be transferred the assets of the business which he now operates under the name of Salem Engineering Company. It is agreed that in the event of such incorporation, Keener may assign this agreement and his rights thereunder to such corporation, subject to the approval of Timken, but such assignment shall not relieve Keener of any obligations under this agreement." It will be noted that the agreement "shall inure to the benefit * * * of the successors and legal representatives of the parties", and provided that Keener could assign to a planned corporation (which was not done) but the contract did not provide that the agreement was nonassignable and did not use words prohibiting assignments by Keener. In providing for "successors", etc., it would seem that the agreement implied that Keener could make assignments under the agreement.

As stated in 6 Tex.Jur.2d, p. 404, sec. 5: "Generally any species of property and anything that may be called a debt, are assignable. And, as a general rule, all contracts, whether negotiable or not, are assignable under the statute authorizing an obligee or assignee of any written instrument not negotiable by the law merchant to transfer by assignment his interests to another. * * * The right to assign should ordinarily be presumed. The presumption arises where there is neither an expressed nor an implied prohibition against the assignment in the contract, and where nothing in the circumstances of its execution indicates any intention that it should not be assigned." See also Article 569, Vernon's Ann.Tex.St.; 4 Am.Jur., pp. 234 and 235, secs. 5 and 7. The Keener-Timken agreement was not a personal service contract. In the absence of an agreement that Keener could not assign, we think the assignments mentioned were valid and plaintiffs were proper parties to bring suit thereunder. 4 Am.Jur., p. 234, sec. 5. The point of error is overruled.

Appellant bases a point of error on the action of the court in excluding testimony of a patent attorney distinguishing between "patents" and "licensed inventions" and tending to prove that no shell forging had been produced in accordance with the "inventions" for the years in question.

The agreement executed by appellant and Keener on July 22, 1941, recited that Timken had granted a license to Keener under four different numbered patents known collectively as "Assel patents", and that Keener had a right to sublicense, and that Keener had a right to grant licenses for Machine Rolling or Piercing Billets under the "Clark patent", and "Whereas Keener has the right to grant licenses under any patent or patents that may be granted on patent application serial No. 312,499 for the Manufacture of Closed-End Tubes by Cross-Rolling, filed in the United States Patent Office on January 5, 1940, by C. A. Witter, of Philadelphia, Pennsylvania, hereinafter referred to as the 'Witter application,' which said Assel patents, Clark patent and any patent or patents issued on said Witter application are hereinafter collectively referred to as the 'licensed patents' and the inventions of said Assel patents, Clark patent and any patent or patents which may be issued on said Witter application are hereinafter collectively referred to as 'licensed inventions,' * * * therefore, * * * Keener hereby grants to Licensee a non-exclusive, non-assignable license under said licensed patents and any reissues thereof to practice throughout the United States of America the inventions described and claimed in said patents and patent application and any reissues thereof for the sole and exclusive purpose of manufacturing and selling closed-end ordnance projectiles and for no other purpose whatsoever. * * * If Keener shall hereafter own, control or secure the right to grant licenses under any additional patents covering any improvements upon the licensed inventions, or the products thereof, Licensee shall, from the date of the acquisition of Keener's right therein, be licensed thereunder upon the same terms and conditions herein provided for the abovenamed li-

censed patents and without payment of any royalty other than that herein provided."

Paragraph 3 provided for payment of royalty by appellant and section (c) read: "The tonnage of shell forgings on which royalty is payable shall be that tonnage of shell forgings that are produced within the tolerances of specifications for shell forgings without a subsequent machining operation involving the removal of metal." As later revised, said provision read: "The tonnage of shell forgings on which royalty is payable shall be that tonnage of shell forgings that is produced in accordance with the licensed inventions before a subsequent machining operation involving the removal of metal."

Paragraph 4 provided for an annual statement from appellant showing number, size and weight of closed-end ordnance projectiles produced "under the license granted" during the preceding calendar year. Paragraph 6 gave Keener the right to inspect "all licensed equipment" installed by licensee. In paragraph 7 the licensee, appellant, admitted the validity of the licensed patents. Paragraph 8 pertained to possible improvements on any of the "licensed inventions" or "products" thereof.

Paragraph 9 provided: "In the event of the institution of any bona fide action or actions against Licensee alleging that the employment of the licensed inventions or any of them infringe any letters patent of the United States," Keener should pay expense of defending.

Paragraph 10 referred to "the license" granted.

Paragraph 12 provided: "Unless otherwise terminated this license agreement shall remain in force until the expiration of the last licensed patent but any claim or claims declared invalid by an unappealed or unappealable decision of a court of competent jurisdiction shall be deemed to have expired for the purposes of this license and agreement."

■ The trial court held that the proffered testimony would vary the terms of the written agreement. We agree. In our opinion the parties were, in using the words "inventions" and "patents", referring to the Witter process. As a general rule, in the absence of fraud or mistake, parol evidence is inadmissible to vary, add to or contradict a valid written contract or other instrument which is complete and unambiguous on its face. 17 Tex.Jur., p. 791, sec. ·352. There is no pleading of fraud or mistake in the instant case.

■ Neither do we think "inventions" needed explanation. If after applying established rules of interpretation to the contract it remains reasonably susceptible to more than one meaning it is ambiguous, but if only one reasonable meaning clearly emerges it is not ambiguous. In the latter event the contract will be enforced as written and parol evidence will not be received for the purpose of creating an ambiguity or to give the contract a meaning different from that which its language imports. Lewis v. East Texas Finance Co., 136 Tex. 149, 146 S.W.2d 977; Universal C. I. T. Credit Corp. v. Daniel, 150 Tex. 513, 243 S.W.2d 154. We agree with plaintiffs that "there is no question but what the term 'licensed inventions,' as used within the intent and meaning of the sublicense agreement of 1941, and the amendments thereto, pertains to those inventions covered in the 'licensed patents' and the inventions contained in such patents relate to the methods and/or apparatus involved in the making of shell forgings on 'Witter Mills' under the 'Witter Process.'"

Moreover, the parties themselves so interpreted the contract. Beginning in early 1942 appellant manufactured shell forgings on the Witter machines. Royalties were paid by appellant to Keener, or to his trade name Salem Engineering Co., through 1952. During the years 1953, 1954 and 1955, some or all of appellant's records, tax returns, credit reports and worksheets showed an amount for each year owed to Salem (Keener) for royalties on shell forgings produced in those years. Appellant did not stop the royalty payments in 1952 because

of any controversy over the meaning of the word "inventions" in the contract, but according to the witness who was general manager of appellant company at the time, "In the first place, of course payments of royalty was a pretty heavy strain financially at that time, and it was held up for that, some of the payments were. And then some time in 1953, Salem Engineering Company, or the Keener interests or whoever was operating then, sent an auditor in there and we had some disagreement over the amount of royalty that was due, and so we stopped payment on them then and we didn't pay anything else."

■■ The practical construction placed upon a contract by the parties themselves constitutes the highest evidence of the intention of the parties that whatever was done by them in the performance of the contract was done under the terms of the contract as they understood them, and as under the terms of the contract it was intended to be done. Cooley v. Buie, Tex. Com.App., 291 S.W. 876; 12 Am.Jur., p. 787, sec. 249; Henshaw v. Texas Natural Resources Foundation, 147 Tex. 436, 216 S.W.2d 566; City of Fort Worth v. Barlow, Tex.Civ.App., 313 S.W.2d 906.

The point of error is overruled.

■ The sublicense agreement provided that unless otherwise terminated the license would remain in force until the expiration of the last licensed patent. Appellant argues the court erred in excluding from the jury evidence that the effective life of a patent is 17 years. The record shows the date of issuance of the "last" patent as July 29, 1941. The issues submitted to the jury were confined to years well within the 17 years of "effective life" of the patent.

We fail to see how the jury could have been benefited in any way by evidence of the life of a patent.

Appellant excepted to the plaintiffs' petition because it failed to allege what tonnage of forgings was produced, and excepted to the jury issues on amount of tonnage for the 3 years in question on the ground there were no pleadings to support them.

In lengthy pleadings plaintiffs alleged the term of the agreement between appellant and Keener, that all records concerning the shell forgings were in the exclusive possession of appellant, failure and refusal of appellant to make reports as required by the contract, and that appellant be required to furnish books, records, etc., showing number, size and weight of closed-end projectiles produced on the Witter Mills for the years in question.

■■ All pleadings should be so construed as to do substantive justice. The primary purpose of pleadings is to give notice of what is relied upon as a ground of recovery or defense. We think it clear that plaintiffs' petition was amply sufficient to accomplish that purpose, and to support the issues submitted thereunder.

■ We find no reversible error in the exclusion of witness Lott's testimony that "some" forgings did not go through the Witter Mills. Lott was an officer in appellant company. He made no attempt to show how much did not go through the Witter Mills and produced no records showing such fact. Indeed, the appellant's records were to the contrary.

■ Appellant urges it was error to permit plaintiffs to introduce appellant's income tax returns, worksheets and annual audit reports. The exhibits showed the amount of royalty set up by appellant as due under the Keener agreement for 1953, 1954 and 1955. Only the portions of the tax returns pertaining to the royalties in question were introduced. Since they were relevant and material to the principal issue in the case, i. e., was appellant indebted to plaintiffs for royalties for the years in question, they were properly admissible. Crane v. Tunks, Tex., 328 S.W.2d 434. The witness Hubert, called by plaintiffs, who was general manager of appellant com-

pany during the years above mentioned, testified the worksheets were made by an accountant, under his direct supervision and control, were made a part of appellant's accounting records, and were records made in the regular course of business. We think such records were admissible as business records, and they and the annual audit reports were admissible as admission against interest.

■ The agreement provided that "Keener shall promptly disclose to Licensee the granting of any sublicense after July 19, 1940, at a lower net rate than the rates set forth in subparagraph (a) of this article, or upon better terms, and such terms shall thereupon be extended to Licensee."

Appellant argues that Keener granted National Tube Company a royalty rate of one-half of the rate specified for appellant, and thus appellant was entitled to recover overpayments made to Keener. The Keener-National Tube Company contract was dated July 19, 1940, or approximately a year before the Keener-American contract was executed. The Tube Company contract is dated as of the 19th of July, 1940, not *after* July 19, therefore no violation of the American contract by Keener is shown. In addition, the jury found, on sufficient evidence, that appellant in the exercise of ordinary prudence should have discovered, before Jan. 1, 1956, the existence of the Keener-National Tube Company contract.

■ Appellant claimed recovery for royalties paid, under mistake, on rocket forgings, based on testimony of witness Lott that rockets were not projectiles. Appellant's records were to the contrary and the jury found that a rocket "is such a projectile" as the term was used in the contract. The point is overruled.

■ Under an amendment Keener and appellant on July 1, 1945, agreed upon a reduced royalty rate "until six (6) months after the termination of all wars in which the United States were engaged as of July 1, 1945." Appellant contends, since plain-

tiffs offered no proof as to termination of such wars, that the reduced rate should have been applied to plaintiffs' judgment. War, in the legal sense, continues until, and terminates at the time of, some formal proclamation of peace by an authority competent to proclaim it. 93 C.J.S. War & National Defense § 42, p. 121. The court could take judicial knowledge of the official acts of Congress officially terminating the wars.

Appellant contends it terminated the contract, under provisions thereof, as of December 31, 1954. We uphold the trial court's ruling that appellant did not effectuate a termination of the contract.

■ The jury verdict was for $25,776.-65. The amount found by the jury for each year was: 1953, $17,490; 1954, $5,386.80; 1955, $2,899.85. Judgment was entered on February 25, 1960, and allowed interest on each of the above amounts from December 31 of each respective year. The plaintiffs contend the amount found by the jury was liquidated. We disagree. Under the pleadings and the evidence, the amount of tonnage for which royalties were due could be determined only by the jury. The jury, under the evidence, could have found more or less than it did. Article 5070 provides: "When no specified rate of interest is agreed upon by the parties, interest at the rate of six per cent per annum shall be allowed on all written contracts ascertaining the sum payable, from and after the time when the sum is due and payable; and on all open accounts, from the first day of January after the same are made."

Generally, interest will not be allowed on a demand until the amount is made certain, either by an accord or verdict. McNeill v. Casey, Tex.Civ.App., 135 S.W. 1130; Faulkner v. Reed, Tex.Civ.App., 229 S.W. 945, reversed on other grounds Tex.Com. App., 241 S.W. 1002.

The judgment is modified by eliminating from plaintiffs' recovery interest before the date of judgment. The judgment, as modified, is affirmed.