Oron SMITH, et al., Appellants,

v.

SHAR–ALAN OIL COMPANY, et al., Appellees.

No. 10–89–223–CV.

Court of Appeals of Texas, Waco.

Oct. 11, 1990.

Rehearing Overruled Nov. 15, 1990.

Wendle Van Smith, Houston, for appellants.

Patrick H. Simmons, Cannon and Simmons, Groesbeck, Thomas H. Lee & Beth J. Forman, Jackson & Walker, Houston, John H. Mallard, Centerville, for appellees.

## OPINION

MEANS, Justice.

Oron Smith and Willie Bell Handsborough Browder, Appellants, sued Shar–Alan Oil Company, Harken Exploration Company and David Free, Appellees, requesting that the trial court declare unenforceable two oil and gas leases executed by Smith and Browder,[1] and that they recover damages for fraudulent misrepresentations and their attorney's fees. After a jury found all questions in favor of the Appellees, the court awarded judgment against Smith and Browder and ordered them to pay Appellees' attorney's fees incurred in defending this action. Smith and Browder appeal from this judgment by six points of error claiming that certain jury questions should not have been submitted. These points will be overruled and the judgment affirmed.

The evidence at trial revealed the following sequence of events:

1. Richard Davis, the owner of 255 acres covered by the oil and gas leases in issue in this case, died intestate in 1957. Shar–Alan acquired from Davis's legitimate heirs oil and gas leases covering this property and, on August 16, 1985, spudded a well on the tract. Thereafter, David Free, the County Surveyor of Leon County, heard that Smith and Browder were the illegitimate children of Davis and therefore had a possible ownership interest in the land.

2. On approximately August 30, 1985, Smith and Browder each executed and returned an oil and gas lease covering the tract to David Free. At that time, Free tendered to each of them a check in the amount of $100 bearing the words, "For Richard Davis Lease." Free testified that he told Smith and Browder that he would pay, in addition to the $100, $250 for each mineral acre they established title to, conditioned on the approval of that title by an attorney. Free originally calculated this amount to be $5,875 each, based upon the interest he believed they would own as heirs of Davis. He handed each of them a draft in that

---

**1.** In connection with this request, Appellants also asked for releases of the leases, an accounting of production, and recovery based upon their alleged rights to the oil and gas and other minerals produced.

amount along with the two $100 checks when he was delivered the leases. Across the top of both drafts, Free wrote "60 day clearance-contingent upon attorney approving title." According to Free, this meant "that sixty days after they were declared to be an heir of Richard Davis, the drafts would be honored." The leases were filed for record on September 17, 1985.

3. After the leases were filed, the legitimate heirs of Davis refused to recognize Smith and Browder as Davis's children. Subsequently, Smith and Browder filed an heirship case, resulting in a jury verdict and trial court judgment in their favor in September of 1987.

4. Because Browder tried to negotiate her $5,875 draft after the heirship case was filed, on October 7, 1985, A. Keller Doss, an attorney representing Shar–Alan, wrote a letter addressed to both Smith and Browder setting forth his understanding of the terms of the transactions of August 30, 1985. Specifically, Doss wrote: "Mr. Free has previously informed you, both verbally and in writing, that he cannot honor the draft for the balance of the bonus to be paid on the lease until such time as the Court in Leon County, Texas declares you to be an heir of Richard Davis." (Shar–Alan was responsible for this letter instead of Free because there was a verbal agreement at this time for Free to assign the leases to Shar–Alan. The assignment was made in writing in December, 1985.)

5. In 1986, during the pendency of the heirship case, Shar–Alan drilled another well on the tract. Shar–Alan asserts that this second well would never have been drilled had it known that Smith and Browder were going to question the validity of the leases.

6. As soon as the heirship case established that Smith and Browder were heirs of Davis, Free tendered each of them a cashier's check in the amount of $9,375 which was based upon their respective ownership interests in the property. On the advice of their counsel, Smith and Browder refused to accept the checks.

7. In December, 1988, Shar–Alan sold substantially all of its assets to Harken. However, the purchase agreement between Shar–Alan and Harken excepted the leases in issue in this case, but provided for an assignment of such leases if this case is resolved "in a manner permitting the conveyance of all or any portion of the withheld leasehold interests ... free of any claim by the plaintiffs." Smith and Browder allege that they joined Harken in this case as a defendant "for accounting purposes due to its position as a succeeding operator."

The argument underlying almost all of Appellants' points of error is that the leases were ineffective because of the failure of a condition precedent, i.e. the honoring of the drafts within sixty days. However, this argument assumes that the honoring of the drafts within sixty days was actually a condition precedent to the formation of the contract. Smith and Browder assert, citing *Sun Exploration and Production Co. v. Benton*, 728 S.W.2d 35 (Tex.1987), that the "sixty day clearance" language written on the drafts required Free to approve title and honor the drafts within sixty days from the date they were tendered, and because this "condition precedent" was not performed, the leases should be set aside. The court in *Sun* held:

A contemporaneously exchanged draft and deed must be construed together. *Puckett v. Hoover*, 146 Tex. 1, 202 S.W.2d 209, 211 (1947). Here, the language on the face of the draft made Sun's approval of title a condition precedent to formation of the contract. Where the grantee imposes certain conditions precedent to acceptance, title does not pass under the deed until fulfillment of such conditions.

*Id.* at 37. *Sun* is not analogous to this case. In *Sun*, the items exchanged by the

parties indicated that the contract was conditional. In that case, the prospective lessor was not trying to set aside the lease; he was trying to show that the oil company had breached the contract by not honoring the draft. Because of the notation on the draft, "15 days after sight and upon approval of title," there was a condition precedent both to the liability on the draft and the formation of the lease contract. *Id.* Here, we do not have two sets of items to be construed together, but three—the leases, the drafts, and the checks. In interpreting the contract, the court not only had to consider the "sixty day clearance" language on the drafts, but also the leases, the checks and the checks' notations, "For Richard Davis Lease."

■ In their first two points of error, Smith and Browder complain that the court erred when it denied their motion for instructed verdict and submitted Jury Question Number One which asked:

> Do you find that on or before August 30, 1985 there was an agreement between David Free, Oron Smith and Willie Bell Handsborough Browder that the oil and gas leases in question would be returned if the drafts in the sum of $5,875.00 each were not paid within sixty days of August 30, 1985?

Smith and Browder assert that there existed no material issue of fact for the jury to decide because the "condition precedent" was not performed. However, the issue involved is whether or not there was, in fact, a requirement of the alleged condition precedent. The primary concern of the court in the interpretation of a contract is to ascertain and to give effect to the intentions of the parties as expressed by the instrument. *R & P Enterprises v. LaGuarta, Gavrel & Kirk,* 596 S.W.2d 517, 518 (Tex.1980). If, after applying the established rules of construction, a court determines that the contract is ambiguous, that is, capable of more than one meaning, parol evidence may be admitted to help resolve the ambiguity, and, if such evidence is conflicting, the question of the parties' true intent is for the jury. *See Trinity Universal Ins. Co. v. Ponsford Brothers,* 423 S.W.2d 571, 575 (Tex.1968). In this case, there was a simultaneous exchange of 1) an unconditional lease, 2) drafts bearing language making, at the very least, liability on the drafts conditional, and 3) checks, bearing notations indicating that the checks were the consideration for the leases. The parol evidence indicated that Smith and Browder believed that the drafts would be honored within sixty days from the date they were received and that Free believed that not only were the drafts payable sixty days from the date they were declared to be heirs of Richard Davis, but that also the leases were unconditional at the time they were tendered to Free. Because of this conflicting evidence, the court was correct in reserving for the jury the resolution of this conflict.[2] *See id.*

■ Smith and Browder also argue that because Free did not plead ambiguity, the court could not find that there was an ambiguity and place the question of the intention of the parties before the jury. Even though Shar–Alan pleaded ambiguity, Smith and Browder claim that it is not a "true assignee" of Free, and therefore cannot make assertions Free could have made, because title never passed due to the failure of the performance of the alleged condition precedent. To argue that the jury question should not have been submitted because there was no performance of the alleged condition precedent creating an assignable contract, when the jury question asked whether there was, in fact, such a condition precedent to the contract, is a *non sequitor.*

Additionally, even if we were to assume that Smith and Browder are correct in their assertions that this was merely a "contract to lease" and that the performance of the alleged condition precedent was required, the court would still have been correct in denying the motion for instructed verdict

---

2. Appellants allege that the court did not make a finding of ambiguity. However, the court implicitly determined that the documents were ambiguous when it permitted parol evidence on the intent of the parties and such a finding was implied when it submitted Jury Question Number One.

because there were pleadings and proof of the affirmative defenses of waiver, estoppel and laches which could have worked to excuse the performance of the alleged condition precedent. *See Puckett*, 202 S.W.2d at 212; 34 TEX.JUR.3d *Equity* § 54 (1984). These issues presented material questions of fact that the jury, and not the court, had to decide.[3] Appellants' first two points are overruled.

■ Appellants stress in their third point of error that once the court decided it would place the question of the intention of the parties before the jury, it should not have submitted Jury Question Number One, but should have submitted Appellants' requested jury question numbers two, three, four and six. These requested questions were:

2. Do you find that DAVID FREE entered into an agreement with ORON SMITH and WILLIE BELL HANDSBOROUGH BROWDER to purchase the leases dated August 30, 1985?

3. Do you find that the conditions stated on the draft "60 day clearance-contingent upon attorney approving title" was performed?

4. Do you find that SHAR–ALAN by and through DAVID FREE caused the drafts to ORON SMITH and WILLIE BELL HANDSBOROUGH BROWDER to be returned unpaid after the expiration of sixty (60) days as stated on the drafts?

6. Do you find that ORON SMITH and WILLIE BELL HANDSBOROUGH BROWDER repudiated their leases before DAVID FREE tendered the promised consideration?

The requested jury question number two addressed an issue which was not in dispute. As Shar–Alan and Harken correctly note in their brief, "there was some question as to whether the agreement to purchase the leases was conditional or outright, but there was never a question that plaintiffs and David Free agreed, at some time, under some conditions, that he would purchase the leases from them." There-

fore, the court did not err in refusing to submit this question. *See Sullivan v. Barnett*, 471 S.W.2d 39, 44 (Tex.1971). Neither did it err in refusing to submit requested jury question number four which also asked about an issue not in dispute. There was no question that the drafts had not been cleared within sixty days from any time period. They were not cleared within sixty days from August 30, 1985, and they were not cleared after the heirship case was decided. Smith and Browder were, however, tendered payment based upon their respective ownership in the property after the trial of the heirship case resulted in their favor, but they refused to accept such payment. Requested jury question number three is confusing because it is not clear whether the "conditions" stated in the question were conditions to the lease contracts themselves or to the liability on the drafts. Requested jury question number six is as confusing as number three. The "consideration" stated in the question could be referring to the $100 checks, or, to the $250 per mineral acre. Both of these questions were properly refused.

As for the submission of Jury Question Number One, first, courts are encouraged to submit "broad-form questions" (TEX.R. CIV.P. 277); and, second, none of the proposed jury questions asked the issue in dispute—whether the honoring of the drafts within sixty days from the date they were tendered was a condition precedent to the formation of the leases. Point three is overruled.

■ Appellants' fourth point of error addresses the submission of Jury Question Number Two which asked:

Do you find that David Free made fraudulent representations to Oron Smith and/or Willie Bell Handsborough Browder on or before August 30, 1985?

Smith and Browder maintain that the court erred in submitting this question because their pleadings asserted that it was Shar–Alan that had committed fraudulent repre-

---

3. The adequacy of the pleadings and proof on these issues will be discussed in connection with our consideration of Appellant's fifth point of error.

sentations, "by and through its agent, David Free." This jury question was followed by a later jury question asking if Free was Shar–Alan's agent. The two questions together presented the issue of whether Shar–Alan committed the acts which Smith and Browder asserted it committed. Therefore, no error is presented by this point.

■ Jury Question Numbers eight, nine and ten are the questions under attack by Smith and Browder in their fifth point of error. These questions asked if Smith and Browder waived their right to cancel the leases, were guilty of laches, and were estopped from canceling the leases, respectively. The jury found against Smith and Browder on all three questions. Smith and Browder complain that these questions should not have been submitted because Free did not plead these affirmative defenses and because there was no evidence to support the jury's answers.

Initially, we must point out that the discussion of this question is unnecessary because the jury found, by its answer to Jury Question Number One, that the honoring of the drafts within sixty days was not a condition precedent to the formation of the lease contracts, and there is no point on appeal complaining that the evidence was insufficient to support this finding. Because the honoring of the drafts within sixty days was not a condition precedent, and Appellants' claim was that there was a failure of this alleged condition precedent, they did not even have a claim which could be barred by waiver, laches or estoppel. However, assuming that there was a requirement of and a failure to perform this alleged condition precedent, there was some evidence at trial to support the jury's findings. "Waiver" was defined for the jury as "an intentional relinquishment of a known right or intentional conduct inconsistent with claiming it." *See Sun,* 728 S.W.2d at 37. The jury was instructed that "laches" means "(1) unreasonable delay in asserting rights; and (2) good faith change of position by another to his detriment because of the delay." *See City of Fort Worth v. Johnson,* 388 S.W.2d 400, 403

(Tex.1964). "Estoppel" was defined for the jury as follows:

> Where a person, with knowledge, by his or her acts, representations, admissions, or by his or her failure to act, by his or her silence or acceptance of benefits leads another to believe that certain facts exist and the other person relies and acts upon such belief and would be prejudiced if the former were permitted to deny existence of such facts.

*See Gulbenkian v. Penn,* 151 Tex. 412, 252 S.W.2d 929, 932 (1952). In reviewing a no evidence point we are to "consider only the evidence and inferences tending to support the jury verdict and disregard all evidence to the contrary." *International Armament Corp. v. King,* 686 S.W.2d 595, 597 (Tex.1985). "If there is any evidence of probative value to support the jury verdict we must affirm." *Id.* If there was any confusion as to when payment would be made based upon Smith's and Browder's rights in the property, it was cleared when they received the letter from the attorney, A. Keller Doss, dated October 7, 1985. Smith and Browder could have asserted at that time that they believed the honoring of the drafts within sixty days from the date they were tendered was a condition precedent to the lease contracts, and the leases, therefore, would not be valid after October, 1985. There was evidence indicating that Shar–Alan relied upon Appellants' inaction in that it would not otherwise have drilled a second well on the property because there were other equally favorable locations for drilling. This evidence, at the very least, supports the jury's findings on the questions of laches and estoppel. Therefore, Appellants' no evidence argument fails.

■ Their "failure-of-pleading" argument fails as well. Shar–Alan and Harken pleaded all of these affirmative defenses. Again, Smith and Browder assert that Shar–Alan was not a "true assignee," and therefore unable to make the same assertions that Free could have made. *See American Manufacturing Company of Texas v. Witter,* 343 S.W.2d 943, 946 (Tex. Civ.App.—Fort Worth 1961, no writ). This lack-of-privity argument, as it was in Appellants' first two points of error, is based

upon Smith's and Browder's belief that there were never any lease contracts to assign due to the failure of the performance of the alleged condition precedent. If, however, the condition precedent was waived, barred by laches, or barred by estoppel, it makes no difference that the condition precedent never occurred, and the lease contracts were assignable, giving Shar–Alan privity to the contract. *See id.* Point of error number five is overruled.

■ By their last point of error, Smith and Browder insist that the court erred in submitting Jury Question Number Eleven asking the jury to determine the "reasonable and necessary attorney's fees for the services of Defendants' attorney." They base their complaints on two arguments: 1) "DAVID FREE presented no evidence for attorney fees," and 2) "SHAR–ALAN OIL COMPANY and HARKEN EXPLORATION COMPANY had no contractual or statutory basis nor standing to support an award of attorney fees."

As Harken and Shar–Alan are quick to point out in their brief, Free's failure to offer evidence of attorney's fees is inconsequential because the judgment did not award David Free any attorney's fees. The judgment awarded attorneys' fees to Shar–Alan and Harken only, and we must indulge every reasonable presumption to sustain this award. *See Miller v. Hood*, 536 S.W.2d 278, 285 (Tex.App.—Corpus Christi 1976, writ ref'd n.r.e.).

Appellants' second argument in this point of error is equally ill-founded. Smith and Browder brought Shar–Alan and Harken into this action. However, irrespective of that fact, Shar–Alan was an assignee of the lease contracts, and Harken had a future right to the assignment which depended upon the outcome of this litigation. Both were not only proper parties in the declaratory judgment action requesting the court to construe the leases, but necessary parties. *See* TEX.CIV.PRAC. & REM. CODE ANN. § 37.006(a) (Vernon 1986); *Dorn v. Cartwright*, 392 S.W.2d 181, 184–85 (Tex.App.—Dallas 1965, writ ref'd n.r.e.) (holding that a purchaser in a contract of sale for real property was a necessary party to a suit filed for a declaratory judgment by the seller to determine whether, under the terms of a will, the testator gave the seller the fee simple title to the property under contract). Clearly, both Shar–Alan and Harken had interests in the lease contracts which would be affected by the declaration, and therefore, they were proper parties to the declaratory judgment action. *See id.* That being the case, the court had the authority to award attorneys' fees to Shar–Alan and Harken. *See* TEX.CIV. PRAC. & REM.CODE ANN. § 37.009 (Vernon 1986). Point six is overruled.

Shar–Alan and Harken bring two cross-points which assert additional reasons for affirmation of the judgment. Because Appellants have presented no error, we render our decision on this basis and need not consider the cross-points. The judgment is affirmed.

HALL, J., not participating.