IN THE

TENTH COURT OF APPEALS




 
 
 
 
 
 
 


 



No. 10-06-00414-CV

 

Donald M. Shannon, et ux.

and Douglas L. Shannon,

                                                                                    Appellants

 v.

 

Paul Peyton Barbee 

d/b/a Barbee & Company,

                                                                                    Appellee

 

 

 



From the 12th District Court

Leon County, Texas

Trial Court No. 0-05-238

 



MEMORANDUM  Opinion



 

Florence Shannon and Appellants Don, Andrea, and
Doug Shannon sued Appellee Paul Barbee for a declaratory judgment that the Shannons’ oil and gas lease was void because Barbee’s drafts in payment for the lease had
not been timely paid.  Barbee counterclaimed for declaratory judgment,
asserting that the lease was valid because the Shannons had extended the time
to pay the drafts when a cloud on the Shannons’ title had to be cleared up.  

The trial court directed a verdict against Florence on her claim because she did not appear at trial (and she has not appealed).  A
jury found that the parties had formed an agreement and that Barbee had not
breached the agreement.  The trial court entered a judgment declaring the lease
effective and awarded Barbee $19,900 in attorney’s fees.  Asserting three
issues, Don, Andrea, and Doug Shannon appeal.  We will affirm.

Background

The Shannons together owned approximately 1,300
acres in Leon County.  They had previously leased the land’s mineral estate, and
because they were dissatisfied with the current lease offer, they contacted
Barbee, whom Andrea knew, for advice.  Barbee met with Don and Doug Shannon and,
upon seeing the current offer, made a better offer.  Upon getting Florence’s approval, on December 22, 2004, all of the Shannons signed the December 18
lease and conveyed their mineral interests to Barbee.

In exchange, Barbee delivered three drafts to the
Shannons (one to Don and Andrea, one to Doug, and one to Florence), each in the
amount $70,261.00.  Each draft was endorsed and placed for collection with
Normangee State Bank (the Bank) on December 24.  Each draft stated that it was
drawn to pay for the lease and was conditioned on the approval of the lease and
approval of title to the lease not later than thirty banking days after arrival
of the draft at the collecting bank.  Each draft further provided:

The drawer, payee and endorsers hereof, and the
grantors of the lease described hereon, do hereby constitute and appoint the
collecting bank escrow agent to hold this draft for the time above specified
subject alone to acceptance of payment hereof by the drawer, within said time,
and without any right of the drawer, payee or endorser hereof, or said
grantors, to recall or demand return of this draft prior to the expiration of
the above specified time, and there shall be no liability whatsoever on the
collecting bank for refusal to return the same prior to such expiration.

 

In the event this draft is not paid within said
time, the collecting bank shall return the same to forwarding bank and no
liability for payment or otherwise shall be attached to any of the parties
hereto.

 

            A drill site title opinion revealed
that the Shannon owned only seven-ninths of the leased acreage (two cousins apparently
owned two-ninths), so Barbee asked the Shannons to extend the time to pay the
drafts.  According to a teller and the president of Normangee State Bank, Don
and Doug went there on February 10, 2005 and extended the payment time on the
drafts for thirty days.  The extension was documented by the teller on the collection
department’s slip for Florence’s draft.

Thereafter, according to the bank and Barbee, the Shannons extended the drafts three more times (on March 10, March 23, and April 25). 
Barbee posits that the financial situations of Don and Doug—along with the
unresolved title issue—explain these extensions.  The Shannons’ first attempt
to resolve the title issue failed (the cousins refused to sign a warranty deed
that was prepared by the Shannons’ attorney and that conveyed the cousins’ interests
to the Shannons).  Also, Doug had used his draft as collateral for a loan from
the Bank; he testified:  “I was very interested in seeing the drafts paid off
so that I could settle my financial distress”; he had a “great need . . . to
see the draft paid off;” and “I needed the money desperately.”  Doug admitted
to telling the Bank president that there was an alleged title problem on the
lease because the Bank needed an explanation why the draft had not been paid.  Additionally,
Capital Farm Credit (CFC) held a lien on Don’s mineral interests for a loan to
him.  In a February 18 letter, CFC agreed to subordinate its lien provided that
it received a recorded copy of the lease and a $100 subordination fee.  Barbee
paid that fee for Don.

            In early May, the Shannons hired
another attorney who prepared a trustee’s mineral deed (Don and Doug were
trustees of a testamentary trust that held the two-ninths interest for the
cousins) that acknowledged the title issue and conveyed to themselves
individually the two-ninths interest.  On May 2, Barbee drove with Don and Doug
to the county clerk’s office to have the trustee’s mineral deed recorded.  While
there they ran into attorney William C. Rice, Jr., who ultimately became the Shannons’ trial attorney in this case.  According to Barbee, when the Shannons explained to
Rice why they were there and that they had entered into a lease with Barbee,
Rice said that he had put a “consortium” together and told the Shannons that they should have “gone in” with his group.  Rice asked, “Why don’t you guys
come in with me?”

            According to the Bank, on May 4, the Shannons extended the drafts again for the fifth and final time for thirty days.  Also,
according to the Bank’s president, Frost National Bank (Barbee’s bank) called
each time the drafts were extended to confirm the extensions.  Don and Doug
Shannon testified that while they went to Bank on several occasions relating to
the drafts, it was only to see if they had been paid.  They denied ever telling
the Bank that they were extending Barbee’s time to pay the drafts.

            On May 5, after receiving a copy of
the trustee’s mineral deed, Encana Oil and Gas (USA), Inc. purchased the lease
from Barbee, and Barbee assigned it to Encana on May 11.  After receiving
payment from Encana, Barbee had Frost National Bank issue three cashier’s
checks in the amount of $70,261.00 (the amount of each draft) and made payable
to Normangee State Bank, which received and endorsed the cashier’s checks.  At
Rice’s insistence, the Bank returned the cashier’s checks to Frost, which in
turn returned them.  The Bank then gave them to Rice.

Standing

            In their first issue, the Shannons complain that the trial court lacked subject-matter jurisdiction over the declaratory
judgment suit because (1) Barbee, who had assigned the lease to Encana, lacked
standing as there was no justiciable controversy between the Shannons and
Barbee; and (2) Encana was not a party to the suit.  In their motion for new
trial, which the trial court denied, the Shannons raised their standing issue
for the first time.








The general test for standing requires that there
be a real controversy between the parties that will be actually determined by
the judicial declaration sought.  Texas Ass’n of Bus. v. Texas Air Control Bd., 852 S.W.2d 440, 446 (Tex. 1993).  Standing is a component of
subject-matter jurisdiction, which we consider under the same standard by which
we review subject-matter jurisdiction generally.  Id. at 445-46.  A
party has standing if he has a justiciable interest in the suit or a personal
stake in the controversy. See Nootsie, Ltd. v. Williamson County Appraisal
Dist., 925 S.W.2d 659, 661 (Tex. 1996); Tex. Ass’n of Bus.,
852 S.W.2d at 444.  Standing may be also raised for the first time on appeal.  See
Austin Nursing Center, Inc. v. Lovato, 171 S.W.3d 845, 849 (Tex. 2005).  Standing presents a question of law that we review de novo.  Coons-Andersen v. Andersen, 104 S.W.3d 630, 634 (Tex. App.—Dallas 2003, no pet.).

The Shannons primarily rely on a 1990
decision stating generally (and in a different context) that a lease assignee
is a necessary party.  Smith v. Shar-Alan Oil Co., 799 S.W.2d 368, 374 (Tex. App.—Waco 1990, writ denied); see also Tex.
Civ. Prac. & Rem. Code Ann. § 37.006(a) (Vernon 1997) (“When
declaratory relief is sought, all persons who have or claim any interest that
would be affected by the declaration must be made parties.  A declaration does
not prejudice the rights of a person not a party to the proceeding.”); Tex. R. Civ. P. 39.  But we agree with
Barbee that, by suing him, the Shannons are precluded from claiming that Barbee
lacks standing.  See State & County Mut. Fire Ins. Co. v. Walker, 228 S.W.3d 404, 412 (Tex. App.—Fort Worth 2007, no pet.); see also Spruiell
v. Lincoln Ins. Co., 1998 WL 174722, at *1 (Tex. App.—Amarillo April 13,
1998, pet. denied) (not designated for publication) (“In determining Spruiell’s
standing, it is important to note that Lincoln named Spruiell as a party
defendant in its declaratory judgment suit.  By suing Spruiell, Lincoln gave him standing to contest the judgment on appeal and, under the doctrine of
invited error, Lincoln is now precluded from claiming that Spruiell lacks
standing to challenge the judgment.”).  Also, the absence of Encana as a party
did not deprive the trial court of subject-matter jurisdiction.  See Brooks v. Northglen Ass’n, 141 S.W.3d 158, 162-63 (Tex. 2004); Wilchester
West Concerned Homeowners LDEF, Inc. v. Wilchester West Fund, Inc., 177
S.W.3d 552, 558-60 (Tex. App.—Houston [1st Dist.] 2005, pet. denied).

Moreover, it is undisputed that the
ownership of the funds represented by the cashier’s checks remains in dispute,
and that controversy gives Barbee standing and is a justiciable controversy
between the parties.  We overrule the first issue.

Charge Issues and Sufficiency of the
Evidence

 

The Shannons’ second issue raises
three sub-issues:  (a) the evidence is legally and factually insufficient to
show that the drafts were timely paid or extended to satisfy the lease’s
condition precedent; (b) the alleged oral extensions violate the statute of
frauds as a matter of law; and (c) the evidence is legally and factually
insufficient to show that the Shannons accepted Barbee’s tender of payment.

We have discussed the relationship between
the language in a draft such as the language in this case and an oil and gas
lease; in a case where the draft to pay for an oil and gas lease provided, “On
approval of lease or mineral deed described hereon, and on approval of title to
same by drawee not later than 15 banking days after arrival of this draft at
collecting bank,” we stated: 

A contemporaneously exchanged draft
and deed must be construed together.   Puckett v. Hoover, 146 Tex. 1, 202 S.W.2d 209, 211 (1947).  However, the draft and deed do not always create a
binding bilateral contract immediately.  The formation of a contract may be
contingent on a condition precedent.  Perry v. Little, 377 S.W.2d 765,
769 (Tex. Civ. App.—Tyler 1964, writ ref’d n.r.e.).  When a promise is subject
to a condition precedent, there can be no breach of contract until such
condition or contingency is performed or occurs.  Id.  A condition
precedent may also be waived, and the waiver of a condition precedent may be
inferred from the conduct of a party.  Sun Exploration & Prod.  Co. v. Benton, 728 S.W.2d 35, 37 (Tex. 1987).

 

The Texas Supreme Court found that the
provision “15 days after sight and upon approval of title” on the face of a
draft made approval of title a condition precedent to formation of a contract. 
 Id.  Broughton contends that the “approval of title” language on the
Boudreaux draft likewise constitutes a condition precedent.  We agree.  As in
the Sun Exploration case, the draft effectively protected Broughton from
paying for the property if it disapproved the title.  Thus, at the time of the
exchange of the draft and the deed between Broughton and the Boudreauxs, there
was no binding contract.

 

Broughton Assocs. Joint Venture v.
Boudreaux, 70 S.W.3d
324, 326, 328 (Tex. App.—Waco 2002, no pet.). 

The provisions on the drafts in this
case plainly contained conditions precedent to the formation of an oil and gas
lease.  Those conditions precedent were thirty banking days for (1) approval of
the lease and the Shannons’ title to the mineral interests conveyed in the
lease and (2) payment on the drafts.  Having thoroughly reviewed the record, we
find that the material facts in this case are largely undisputed.  At oral
argument the parties agreed with us that the only material fact in dispute—and
thus the only controlling issue on the merits—is whether the Shannons extended
the time period (thirty banking days) in which the conditions precedent were to
be performed.

On the parties’ declaratory judgment
claims on the validity of the oil and gas lease, the trial court submitted
breach-of-contract questions in broad form to the jury:

QUESTION NO. 1

 

            Did the Shannons and Paul
Peyton Barbee agree to be bound by all the terms and conditions recited in the
Oil and Gas Lease dated December 18, 2004?

 

            In deciding whether the
Shannons and Paul Peyton Barbee reached an agreement, you may consider what
they said and did in light of the surrounding circumstances, including any
earlier course of dealing.  You may not consider the parties’ unexpressed
thoughts or intentions.

 

Answer “Yes” or “No”

 

Answer:       YES      

 

 

 

 

QUESTION NO. 2

 

            Did Paul Peyton Barbee
fail to comply with the Oil and Gas Lease dated December 18, 2004?

 

            You are instructed that
compliance with an agreement must occur within a reasonable time under the
circumstances unless the parties agreed the compliance must occur within a
specified time and the parties intended compliance within such time to be an
essential part of the agreement.

 

In determining whether the parties
intended time of compliance to be an essential part of the agreement, you may
consider the nature and the purpose of the agreement and the facts and
circumstances surrounding its making.

 

Answer “Yes” or “No”

 

Answer:       NO      

 

            Question 3 asked if the Shannons failed to comply with the lease and was conditioned on a “yes” answer to Question
2; the jury thus did not answer it.

The Shannons tendered a series of
special-issue type questions.  During the informal charge conference, the trial
court referred to them as “narrow-form” and said that they were “not
appropriate.”  In the formal charge conference, the trial court asked the
parties for objections, and the Shannons’ attorney stated, “None.”  “Objections
must be made before the charge is read to the jury.”  Frost Crushed Stone Co.
v. Odell Gear Constr. Co., 110 S.W.3d 41, 47 (Tex. App.—Waco 2002, no
pet.).  We therefore must agree with Barbee that the Shannons have not
preserved any charge complaints for appeal.[1] 
See Tex. R. Civ. P. 274; cf.
Bluestar Energy, Inc. v. Murphy, 205 S.W.3d 96, 101 (Tex. App.—Eastland
2006, pet. denied).  Thus, we will not review the Shannons’ issues relating to
their unpled and unsubmitted affirmative defenses.  We will review their
complaints that the evidence is legally and factually insufficient to show that
the drafts were timely paid or extended to satisfy the lease’s condition
precedent because we believe that whether the time period to pay the drafts was
extended was subsumed into Questions 1 and 2.[2]

            Barbee, the Bank teller,
and the Bank president all gave clear and compelling testimony about the
Shannons’ oral extensions of the time period to pay the drafts, and the Shannons’ conduct matched the occurrence of the extensions.  The Bank’s records evidence
the extensions.  The evidence plainly was legally sufficient, and the Shannons’ remarkable testimony that they did not extend the time period, standing alone,
does not justify our finding that it is contrary
to the overwhelming weight of the evidence

On the Shannons’ claim that the
evidence is legally and factually insufficient to show acceptance of Barbee’s
tender of payment, it is true that the Shannons refused to accept the cashier’s
checks from his bank (Frost).  But Barbee had until June 4, 2005 to pay the
drafts, and it is undisputed that those checks arrived at Normangee State Bank,
the collecting bank on the drafts, a day or two after May 16, and the Bank accepted
and endorsed them.  According to the language on the drafts, Barbee and the
Shannons appointed the Bank “escrow
agent to hold this draft for the time above specified subject alone to
acceptance of payment hereof by the drawer, within said time, and without any
right of the drawer, payee or endorser hereof, or said grantors, to recall or
demand return of this draft prior to the expiration of the above specified
time.”  We agree with Barbee that the Shannons could not have refused to accept
Barbee’s timely tender of payment.  We overrule the Shannons’ second issue.

The Shannons’ third issue asserts that
the trial court abused its discretion by submitting the declaratory judgment
action to the jury as a breach of contract action.  As we held above, they did
not preserve their charge complaints for appeal.  This complaint should have
been made at the charge conference before the charge was read to the jury. 
Otherwise, as we stated above, we believe that the controlling issue relating
to whether the drafts were timely paid or extended to satisfy the lease’s
condition precedent was subsumed into the inartfully worded Questions 1 and 2
because the draft’s condition precedent language must be construed along with
the lease.  Our review of the record, including the informal and formal charge
conferences and closing arguments, leaves no doubt that the trial court and the
parties understood that Questions 1 and 2 involved whether the condition
precedent was satisfied.  We overrule
issue three.

Conclusion

Having overruled all of the Shannons’ issues, we
affirm the trial court’s judgment.

 

BILL VANCE

Justice

 

 

Before Chief Justice
Gray,

            Justice Vance,
and

            Justice Reyna

(Chief
Justice Gray concurs in only the judgment which affirms the trial court’s
judgment.  A separate opinion will not be issued.)

Affirmed

Opinion delivered and
filed March 26, 2008

[CV06]









[1]               Even if the Shannons preserved
their charge complaints for appeal, none of their tendered questions on the
merits involved a controlling issue on which there was a factual dispute.  At
least one question involved an affirmative defense (statute of frauds) that the
 Shannons had not pled but that they now claim was tried by consent.  However,
the Shannons did not assert at the charge conference that their affirmative
defenses were tried by consent.  In any event, the Shannons point to no law
that the statute of frauds applies to the alleged extensions, while several
cases hold that an agreement or consent to an extension of time for payment may
be oral.  See, e.g., C & G Coin Meter Supply Corp. v. First Nat’l Bank,
413 S.W.2d 151, 154 (Tex. Civ. App.—Eastland 1967, writ ref’d n.r.e.); Mizell
Constr. Co. & Truck Line, Inc. v. Mack Trucks, Inc., 345 S.W.2d 835, 837-38
(Tex. Civ. App.—Houston 1961, no writ); see also Frost Crushed Stone Co. v. Odell Gear Constr. Co., 110 S.W.3d 41, 47 (Tex. App.—Waco 2002, no pet.)
(discussing use of promissory estoppel to bar application of statute of frauds
and allow enforcement of otherwise unenforceable oral promise).  Also,
Barbee’s payment of Don’s $100 subordination fee could be consideration for one
or more of the extensions.

 





[2]               In reviewing the
legal sufficiency of the evidence, we view the evidence in the light most
favorable to the verdict, crediting favorable evidence if reasonable jurors
could, and disregarding contrary evidence unless reasonable jurors could not.  City of Keller v. Wilson, 168 S.W.3d
802, 807, 822 (Tex. 2005).  There is legally insufficient evidence or “no
evidence” of a vital fact when (a) there is a complete absence of evidence of a
vital fact; (b) the court is barred by rules of law or of evidence from giving
weight to the only evidence offered to prove a vital fact; (c) the evidence
offered to prove a vital fact is no more than a mere scintilla; or (d) the
evidence conclusively establishes the opposite of the vital fact.  Merrell Dow Pharms., Inc. v. Havner,
953 S.W.2d 706, 711 (Tex. 1997).

In a factual sufficiency review,
we consider and weigh all of the evidence, not just the evidence that supports
the verdict.  Maritime Overseas Corp. v. Ellis, 971 S.W.2d 402, 406-07 (Tex. 1998); Checker Bag Co. v. Washington, 27 S.W.3d 625, 633 (Tex. App.—Waco 2000,
pet. denied).  We will set aside the finding only if it is so contrary to the
overwhelming weight of the evidence that the finding is clearly wrong and
unjust.  Ellis, 971 S.W.2d at 407.  Reversal can occur because the
finding was based on weak or insufficient evidence or because the proponent's
proof, although adequate if taken alone, is overwhelmed by the opponent's
contrary proof.  Checker Bag, 27 S.W.3d at 633.