**LOWER COLORADO RIVER AUTHORITY, Appellant,**

v.

**Gene ASHBY, Appellee.**

**No. 12326.**

Court of Civil Appeals of Texas, Austin.

Nov. 19, 1975.

Rehearing Denied Dec. 17, 1975.

Fred B. Werkenthin, Edward C. Small, Dennis R. Reese, Small, Craig & Werkenthin, Austin, for appellant.

Samuel D. McDaniel, Austin, for appellee.

PHILLIPS, Chief Justice.

The question before us is whether the appellant Lower Colorado River Authority, under the terms of its easements with appellee landowner, has abandoned its transmission lines or exceeded the scope of its easement situated on appellee's property by substituting steel towers for wooden H-frames to carry its lines and by adding additional wires on the substituted towers thus increasing the electrical load.

Appellant denies any abandonment, insists that its utilization of the easements has been in accordance with rights granted thereunder and by cross claim sought a declaratory judgment to that effect. The trial court held that appellant had abandoned the easement and rendered judgment for appellee. Subsequently the damage issue was tried before a jury and the trial court entered a final judgment for appellee for $86,947.50 plus interest. Appellant then perfected its appeal to this Court. We reverse and render judgment as hereinafter described.

Appellant contends, and we agree, that the court erred in finding in its first conclusion of law that: "the size and general nature of the transmission lines contemplated by the 1939 and 1940 grants were not specifically set out in the grants other than by attached drawings indicating the contemplated voltages and that double pole type structures to be erected." This is appellant's first point of error. We also sustain appellant's points two through six which, in essence, assign error to the judgment of the trial court in holding the easement abandoned and in failing to declare, under the terms of the easement, that the appellant was granted the rights to reconstruct, maintain and operate the electric transmission facilities hereinafter described.

Three separate easements are involved in this suit. Each was obtained by appellant from appellee's predecessors in title by written easement and right-of-way instruments. The provisions of these easements are identical. Because the greatest changes in the transmission lines in question occurred on easement number 13, we will address ourselves to the facts and the law pertinent to that easement only; however, our determination of the extent of the rights granted appellant on easement number 13 will necessarily determine the extent of the rights granted appellant on the remaining two easements.[1]

---

1. Easement number 13 is the northernmost easement and is separated from easement number 6 to the south by a strip of unencumbered land. Easement number 4 is located immediately to the south of, and adjoining, easement number 6.

Easement number 13 was acquired in 1940 and the original electric transmission facilities were constructed on the easement shortly thereafter. There were no physical changes or reconstruction of these facilities prior to 1972.

Prior to 1972 one electric circuit consisting of three size 4/0 conductor wires crossed appellee's property on easement number 13. These conductor wires were supported by wooden H-frame structures and the circuit operated at a total current of 138,000 volts or 138 K.V.

In 1972, the two wooden H-frames on easement number 13 were removed and two steel towers were installed on the easement approximately 930 feet apart. The three 4/0 conductor wires were taken down and three larger size .795 circular mil conductor wires were installed in their places. At this same time a second 138 K.V. circuit also consisting of three .795 circular mil wires was also installed on the two towers. While the change in conductor wires increased the kilowatt capacity of the circuit from 80,000 kilowatts to 200,000 kilowatts, the circuits were still designed to be operated and are operated at 138,000 volts or 138 K.V. Both of these circuits span appellee's property on this easement. The steel towers bearing these lines are on the exact path of the prior wooden pole facilities and have a maximum width at their base of approximately forty feet. Changes were made in the transmission lines along the other two easements involved herein, however, as we stated above, this will not be alluded to further.

The wooden H-frames originally placed on easement number 13 were approximately 60 feet high and the two wooden poles on each H-frame were approximately 14 feet apart. The steel towers that replaced the H-frames are approximately 120 feet high. The foundations for the steel towers were poured and the towers were assembled on the ground prior to the time the original circuit was de-energized. The circuit was then de-energized, the old facilities taken down and the new wires were installed in what was described by a witness as a continuous process.

The pertinent parts of the instrument establishing easement number 13 in 1940 are as follows:

"That <u>we, whether one or more, the parties whose names are signed below</u> and ___ of ___ County Texas, for and in consideration of Four Hundred Sixty Dollars ($460.00) to me (us) in hand paid by LOWER COLORADO RIVER AUTHOR-ITY, of Austin, Texas (hereinafter called the "Authority"), have granted, sold and conveyed and by these presents do grant, sell and convey into the said Authority, an easement and right-of-way for an electric transmission and/or distribution line, consisting of variable number of wires, and all necessary or desirable appurtenances (<u>including towers</u>, H-Frames or poles made of wood, metal or other materials, telephone or telegraph wire, props and guys), at or near the location and along the general course now located and staked out by the said Authority, over, across and upon the following described lands located in Travis County, Texas towit: [thereafter follows a legal description of the property].

"The <u>easement shall consist of a strip of land 100 feet wide,</u> the centerline of which is described as follows: [thereafter follows a legal description of the centerline of the easement].

"The above described easement contains approximately 34.97 acres.

"The location of the said Easement being shown on plat hereto attached and incorporated herein by reference.

"Together with right of ingress and egress over my (our) adjacent lands to or from said right-of-way <u>for the purpose of constructing, reconstructing,</u> inspecting, patrolling, <u>hanging new wire on,</u> maintaining and removing <u>said lines and appurtenances;</u> the right to relocate along the same general direction of said lines; the right to remove from said lands all

trees and parts thereof, or other obstructions, which endanger or may interfere with the efficiency of said lines or their appurtenances.

"TO HAVE AND TO HOLD the above described easement and rights unto the said Authority, its successors and assigns, until said line shall be abandoned.

"Not more than ___ towers, ___ H-Frames, 54 poles and 38 guys, shall be erected along the course of said lines unless the said Authority, its successors or assigns, shall pay to me (us), my (our) heirs and legal representatives, at the rate of $5.00 pasture; $10.00 in cultivated land Dollars ($5.00, $10.00) for each tower, H-frame, pole and guy erected in excess of said number, and upon such payments the said Authority, its successors or assigns, shall have the right and the right is hereby granted, to erect towers, H-Frames, poles and guys along said course in excess of said number.

"I (we) do hereby bind myself (ourselves), my (our) heirs and legal representatives, to warrant and forever defend all and singular the above described easement and rights unto the said Authority its successors or assigns, against every person whomsoever lawfully claiming or to claim the same or any part thereof." (Emphasis added)

A plat attached to the easement depicted its boundaries on the property as well as the location of the poles and guys for a 138 K.V. circuit.

In answer to the points of error stated above, appellee contends that the habendum clause of the easement limits the duration of the easement to the life of "said line." Appellee further contends that the undisputed evidence discloses that appellant has removed its original "line" from what was its easement for original transmission line 13 and has replaced it with an installation five times the capacity of the original. Appellee maintains that from the ancillary grant in the abovementioned easement, appellant was confined to the right to maintain, operate and repair the transmission line originally constructed and nothing more; that "reconstructing, inspecting, patrolling, hanging new wire on, maintaining and removing" and "the right to relocate along the same general direction" are all part of maintaining, operating, and repairing the original line, and a substantially different facility than the one for which the easement was granted has been constructed. As authority for this argument appellee relies, primarily, upon *Houston Pipe Line Company v. Dwyer*, 374 S.W.2d 662 (Tex.1964). Appellee contends that *Dwyer* holds that a grant of an easement not specifying either the location of the easement or the size of the line is defined and made certain by the act of the grantee in constructing the facility; after the facility has been constructed with the acquiescence of the grantor, what was before general and indefinite becomes fixed and certain and the grantee cannot change the easement either by moving the location or substantially increasing the size of the installation.

We reject appellee's argument under the terms of the easement itself. In *Dwyer*, the pipeline company obtained an easement on their printed form which read, "First party does hereby grant, sell and convey unto second party a right of way to lay, maintain, operate, repair and remove a Pipe Line for the transportation of gas." The parties struck out the words "and remove" and also deleted a paragraph in the habendum clause giving the future right to construct additional pipelines over such lands for additional consideration. This agreement contained no specifications for the size of the pipeline, nothing about the width of the easement, no metes and bounds description of the easement, nor any course or direction for the line to follow across the land. Because this limited easement was totally silent as to its location and boundaries, that the court held the replacement of an 18-inch pipeline with a 30-inch line constituted an additional servitude for which compensation was due.

*Dwyer* is inapposite here. We hold that the case at bar is controlled by *Knox v. Pioneer Natural Gas Company*, 321 S.W.2d 596 (Tex.Civ.App.1959, writ ref'd n. r. e.). *Knox* allowed an enlargement of the servitude originally granted in an easement which granted rights in excess of those initially used.

The easement before us provides for a "... right-of-way for an electric transmission *and/or distribution line*, consisting of *variable number of wires*, and *all necessary or* desirable appurtenances (*including towers, H-Frames* or poles made *of* wood, *metal* or other materials, telephone and telegraph wire, props and guys) . ." (Emphasis added)

The testimony revealed that a transmission line is much larger than a distribution line and is used for carrying large blocks of electricity for long distances. It is undisputed that the original installation in easement number 13 was a transmission line and appellant has never placed a distribution line on this easement. Under the trial court's erroneous application of the *Dwyer* rule, the original construction of a transmission line on easement number 13 would have operated as a forfeiture of the *expressly granted* right to utilize the easement for a distribution line, even though such distribution line might be completely contained in the specified boundaries of the easement area.

Furthermore, the definition of the lines as containing a variable number of wires, taken with the provision in a later portion of the instrument giving appellant access rights for the purpose of "hanging new wire on . . . said lines and appurtenances"; the right to erect the metal towers; the right to enlarge the number of towers, H-Frames, poles and guys (in excess of the number originally specified in the lease) for a certain described remuneration for each such facility added, are clearly inimical to the trial court's limiting appellant's rights to the maintenance and operation of a 138 K.V. single circuit composed of three size 4/0 wires, and completely ignores

and negates the provisions of the easement contracted for. These provisions represent language added to the easement to expand the grant to appellant.

Thus the easement reflects that the original construction was to consist of a specified number of poles and wires strung thereon, but that the appellant as well as its *successors* were given the *additional right* to substitute metal towers to increase this number for an agreed extra compensation per tower plus the further right to add extra wires to the towers, hence extra circuits.

The easement is then designated as a strip of land 100 feet wide following a course through appellee's land described by metes and bounds. This fact in itself is one of the strongest features in distinguishing the case at bar from *Dwyer*. The parties themselves have, by the terms of their agreement, fixed and made certain the boundaries and limits of the easement. None of the vagueness and indefiniteness of the easement in *Dwyer* is present here.

Particularly significant is the right given appellant to maintain, remove, and reconstruct the line and appurtenances. The Supreme Court in *Dwyer* stated that the terms "operate" and "maintain" were "broad enough to include the right to remove and replace the original pipe with pipe of the same size when necessary." Thus the appellant's right to "maintain" would include the right to completely remove and rebuild the transmission line in whatever manner and form authorized by the easement. This is what appellant has done. However, appellant is also authorized to "reconstruct" which to us means it is authorized to reconstruct "an electric transmission line consisting of a variable number of wires (with) all necessary or desirable appurtenances including (steel) towers."

We hold that the language of the easement before us clearly gives the grantee rights in excess of the one actually used and such right would still exist not-

withstanding the prior exercise of a lesser privilege. *Knox v. Pioneer Natural Gas Company, supra.*

Consequently, we reverse the judgment of the trial court and judgment is here rendered that appellee take nothing by his suit and that appellant be accorded the declaratory relief sought insofar as this relief is consistent with the facts and the holdings set out above.