TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN






NO. 03-97-00561-CV







Augusta Voges, Vernon Voges, Kevin R. Voges, Sheri Tuck, Kenneth Tuck,

Lake Bastrop Acres, Inc., Mary Ann Townsend, Tommy Townsend,

Arnold J. Goertz, Mary Harris Ray, and John Ray, Appellants


v.



Lower Colorado River Authority, Appellee







FROM THE DISTRICT COURT OF BASTROP COUNTY, 335TH JUDICIAL DISTRICT


NO. 21,941, HONORABLE JOHN L. PLACKE, JUDGE PRESIDING 







 This appeal involves the validity of easement rights granted to appellee, the Lower
Colorado River Authority (the "LCRA"). The LCRA sued appellants, Augusta and Vernon (1)
Voges, Kevin R. Voges, Sheri and Kenneth Tuck, Mary Ann and Tommy Townsend, Arnold J.
Goertz, Mary Harris Ray, John Ray, and Lake Bastrop Acres, Inc. seeking a declaration of the
LCRA's right to upgrade its electric transmission line over appellants' property. Alternatively,
the LCRA sought to condemn the additional easement rights necessary for the project. The LCRA
moved for summary judgment, claiming that the easement language in the relevant legal
instruments unambiguously gave it the right to upgrade; the trial court denied the motion. The
matter proceeded to trial, the jury found that the LCRA had the right to upgrade its transmission
line, and the trial court rendered judgment in the LCRA's favor. Appellants raise seven issues on
appeal, complaining chiefly that the trial court erroneously submitted to the jury two questions
about the LCRA's right to upgrade. We will affirm the trial-court judgment.


FACTUAL AND PROCEDURAL BACKGROUND

 Due to increasing demand for electricity in areas in and around Austin, the LCRA
undertook in 1996 to modify its electric transmission line running from the Sim Gideon Power
Plant near Bastrop to the McNeil substation in Austin. The LCRA planned to upgrade the existing
69 kilovolt transmission line (the "69kV line") to a 138 kilovolt line (the "138kV line") by
removing the H-framed wooden structures supporting the line and installing concrete poles to
suspend the new 138kV line. (2) Along most of the route, the LCRA possessed unchallenged rights
to upgrade the transmission line. However, appellants claimed that the LCRA did not have
sufficient easement rights to upgrade the 69kV line over their properties.

 We begin with a brief description of how the LCRA and appellants acquired title
to their respective property interests. In 1943, the LCRA obtained an easement for the
transmission of electricity for a fifty-year term from the United States Government, the
predecessor in title of Augusta and Vernon Voges, Kevin Voges, Tommy Townsend, and Arnold
Goertz (collectively, the "Voges appellants"). (3) The land at that time was part of Camp Swift, a
federal military base. The forty-foot wide easement, which was not recorded, was created "for
the purpose of constructing and reconstructing, repairing, operating and maintaining or removing"
the transmission line. The Voges appellants acknowledge that the 1943 easement, if still in effect,
would unambiguously afford the LCRA the right to upgrade its transmission line from 69kV to
138kV. However, by its own terms, the easement was due to expire on June 2, 1993.

 In 1966, the federal government prepared to sell the properties now owned by the
Voges appellants. Prior to the sale, it entered into a contract with the LCRA to convert the fifty-year easement into a perpetual easement. The 1966 contract clearly referenced both parties' intent
to create a perpetual easement. The government sent out requests for bids to purchase the
properties burdened with the LCRA's perpetual easement. In 1967, the government executed an
easement to the LCRA memorializing the 1966 contract, but the properties had already been
conveyed to appellants or their predecessors in interest during the interim. The language in each
of the Voges appellants' respective deeds specifically referenced that the properties were burdened
with the LCRA's perpetual forty-foot easement. (4) At the time the Voges appellants purchased their
properties, the LCRA's transmission line had been visible on the property for over twenty years.

 The LBA appellants (5) took their properties subject to the rights created by the Lake
Bastrop Acres subdivision plats. Until 1964, the 1943 easement controlled the LCRA's easement
rights across those properties. In 1964, Lake Bastrop Acres purchased its subdivision property;
it also developed and filed of record subdivision plats containing a public utility easement for an
electric transmission line. The LCRA has used the easement for a transmission line since 1964.

 Believing that the language of the plats authorized the upgrade project across the
LBA properties, and that its permanent easement across the Voges appellants' properties gave it
the right to upgrade the transmission line there as well, the LCRA filed suit seeking declaratory
relief. Appellants counterclaimed alleging trespass and fraud, but abandoned those claims before
trial. The LCRA moved for summary judgment, arguing that the documents giving them a
perpetual easement allowed them to upgrade the transmission line from 69kV to 138kV as a matter
of law. Appellants responded that the language in the documents was ambiguous and requested
that the issue be submitted to the jury. The trial court agreed and denied the LCRA's motion.

 At trial, appellants took the position that the LCRA had no easement across the
Voges appellants' properties because the 1943 easement expired in 1993 and the 1967 easement
was outside the Voges appellants' chain of title. The LCRA argued that the notice in the bid
invitations and the deeds to the Voges appellants granting the LCRA a perpetual easement, coupled
with the actual existence of an electric transmission line on the properties, put appellants on
sufficient notice to impose a duty to inquire of the LCRA or the federal government as to the terms
and provisions of the easement, at which point appellants would have learned of the perpetual
easement language granting the LCRA the right to upgrade. Over the LCRA's objection, the trial
court submitted to the jury questions two and three asking whether the LCRA had the right to
upgrade the transmission line (1) on the properties belonging to the Voges appellants and (2) on
the LBA appellants' properties. The jury answered "yes" to both questions and the trial court
rendered judgment on the verdict, declaring that the LCRA had valid perpetual easement rights
across the properties at issue. (6)

 Appellants raise seven issues on appeal. In their first four issues, they urge that the
trial court erred in submitting to the jury the issue of the LCRA's right to upgrade. In their fifth
issue, they contend that the court erred in failing to instruct the jury to limit its consideration to
the "four corners" of the documents to be construed. In their sixth issue, appellants argue that
the court erred in asking the jury to determine questions of law concerning the legal effect of the
documents instead of factual questions regarding the intent of the parties. Finally, appellants
assert that the trial court abused its discretion in refusing to grant their motion for a new trial
because the evidence was legally and factually insufficient to support the jury's findings that the
LCRA's prior easement rights authorized them to upgrade the transmission line.


DISCUSSION

Waiver and Estoppel

 Appellants claim in their first four issues that the interpretation of the easement
documents concerning the LCRA's right to upgrade is a question of law that the trial court should
have decided. However, appellants took the opposite position at trial by arguing that the jury
should decide the LCRA's right to upgrade. Appellants also contested the LCRA's summary
judgment motion, claiming that the easement documents were ambiguous and therefore presented
fact questions for the jury to decide. Finally, it was the LCRA, not appellants, who objected to
the submission of the two jury questions on the right to upgrade. (7)

 A party should not be able to take one position before the trial court and the
opposite position on appeal. See Stewart & Stevenson Services, Inc. v. Enserve, Inc., 719 S.W.2d
337, 341 (Tex. App.--Houston [14th Dist.] 1986, writ ref'd n.r.e.) (citing Litton Indus. Prods.,
Inc. v. Gammage, 668 S.W.2d 319, 321-22 (Tex. 1984)). A related rule is that a litigant cannot
complain about an action of the trial court that was done at the invitation of the complaining party. 
See Stanley v. Riney, 970 S.W.2d 636, 638 (Tex. App.--Tyler 1998, no pet.) (citing Litton, 668
S.W.2d at 321-22, and Cruz v. Furniture Technicians of Houston, Inc., 949 S.W.2d 34, 35 (Tex.
App.--San Antonio 1997, no writ)). Under these circumstances, appellants are estopped to
complain of the submission of questions two and three to the jury, (8) or have waived their right to
do so. (9)
 The points of error raised in appellants' first four issues are overruled.

 In their fifth issue, appellants argue that the trial court erred in refusing to give the
following requested instruction: "You are instructed that in interpreting the 1967 easement and
the Lake Bastrop Acres Plat, you may not consider any evidence other than these documents
themselves." The abuse of discretion standard governs our review of a trial court's refusal to give
a requested jury instruction. See Mobil Chem. Co. v. Bell, 517 S.W.2d 245, 256 (Tex. 1974). 
The trial court has considerable discretion in deciding what instructions are necessary and proper
in submitting issues to the jury. See id.

 The construction of an unambiguous deed is a question of law for the court. See
Altman v. Blake, 712 S.W.2d 117, 118 (Tex. 1986); White v. White, 830 S.W.2d 767, 769 (Tex.
App.--Houston [1st Dist.] 1992, writ denied). The "four corners" rule is a fundamental rule of
construction that the court applies when construing an unambiguous deed in order to ascertain the
intent of the parties from the language in the deed itself. See, e.g., Luckel v. White, 819 S.W.2d
459, 461 (Tex. 1991). However, as appellants concede, the trial court implicitly determined that
the documents were ambiguous when it admitted extraneous evidence of the parties' intent. See
Russell v. City of Bryan, 919 S.W.2d 698, 704 (Tex. App.--Houston [14th Dist.] 1996, writ
denied); Smith v. Shar-Alan Oil Co., 799 S.W.2d 368, 371 n.2 (Tex. App.--Waco 1990, writ
denied).

 If the easement language were unambiguous, as appellants contend on appeal, then
the issue should not have been submitted to the jury at all. See Altman, 712 S.W.2d at 118 (the
construction of an unambiguous deed is a question of law for the court, based on the parties' intent
as expressed within the four corners of the instrument); Rutherford v. Randal, 593 S.W.2d 949,
953 (Tex. 1980) (when deed is unambiguous, court will only search for grantor's intent as
expressed within the "four corners" of deed). We have already held that principles of waiver or
estoppel preclude appellants from arguing that the easement language was a question of law for
the court because it was they, not the LCRA, who insisted on submitting the issue to the jury. 
And if the easement language were ambiguous (as appellants urged at trial), extrinsic evidence of
the parties' intent would be admissible. Cf. McMahon v. Christmann, 303 S.W.2d 341, 344 (Tex.
1957) (trial court may admit extrinsic evidence to resolve conflict or ambiguity in lease
provisions); Snow v. Jupiter Oil Co., 802 S.W.2d 354, 357 (Tex. App.--Eastland 1990), rev'd
on other grounds, 819 S.W.2d 466 (Tex. 1991). Giving a "four corners" instruction to a jury
charged with interpreting ambiguous easement language would be erroneous. The trial court did
not abuse its discretion by failing to give an erroneous jury instruction. We overrule appellants'
fifth issue.

 In their sixth issue, appellants argue that the trial court erred in submitting questions
two and three asking the jury to determine questions of law regarding the legal effect of the
easement instruments, rather than asking the jury to resolve the factual question of the parties'
intent. Appellants cite Trinity Universal Insurance Co. v. Ponsford Brothers, 423 S.W.2d 571,
575 (Tex. 1968), for the rule that it is not within the province of the jury to construe the legal
effect of a written instrument. While this may be a correct statement of the law, appellants'
argument is essentially identical to the ones raised in their first four issues. Appellants' only
objection to jury questions two and three related to their request for an instruction limiting the
jury's consideration to the "four corners" of the easement documents; appellants failed to object
on the ground that the questions should have asked about the parties' intent in entering into the
easements. Thus, they have waived any error in that regard. See Tex. R. Civ. P. 274; State
Dep't of Highways & Pub. Transp. v. Payne, 838 S.W.2d 235, 241 (Tex. 1992) (op. on reh'g). 
Appellants' sixth issue is overruled.


Factual and Legal Sufficiency of the Evidence

 Appellants' seventh issue consists of a challenge to the factual and legal sufficiency
of the evidence. Specifically, appellants argue that because the instruments through which the
LCRA claimed its prior easement rights as a matter of law did not authorize the LCRA to upgrade
its transmission line, the evidence supporting the jury's findings that the LCRA had the right to
upgrade the line across appellants' properties was legally and factually sufficient. In their motion
for new trial, appellants argued both that: (1) there was insufficient evidence as a matter of law
to support the jury's verdict, and (2) that as a matter of law, the LCRA did not have the right to
upgrade its power line. (10)

 In a jury trial, appellate complaints of no evidence and factual insufficiency of the
evidence to support the jury's findings can be preserved by a motion for new trial. See Cecil v.
Smith, 804 S.W.2d 509, 510 (Tex. 1991); One Call Systems, Inc. v. Houston Lighting & Power,
936 S.W.2d 673, 675 (Tex. App.--Houston [14th Dist.] 1996, writ denied). However, appellants
have waived their factual sufficiency challenge because their motion for new trial only stated that
there was "insufficient evidence as a matter of law" to support the jury verdict (emphasis added). 
Therefore, we will only address appellants' "no evidence" arguments.

 In reviewing the evidence under a no-evidence point, we consider all the evidence
in the light most favorable to the prevailing party, indulging every reasonable inference in that
party's favor. See Associated Indem. Corp. v. CAT Contracting, Inc., 964 S.W.2d 276, 285-86
(Tex. 1998); Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25 (Tex. 1994). We will uphold
the finding if more than a scintilla of evidence supports it. See Burroughs Wellcome Co. v. Crye,
907 S.W.2d 497, 499 (Tex. 1995); Seideneck v. Cal Bayreuther Assocs., 451 S.W.2d 752, 755
(Tex. 1970); In re King's Estate, 244 S.W.2d 660, 661 (Tex. 1951). The evidence supporting a
finding amounts to more than a scintilla if reasonable minds could arrive at the finding given the
facts proved in the particular case. See Crye, 907 S.W.2d at 499; Moriel, 879 S.W.2d at 25;
William Powers, Jr. & Jack Ratliff, Another Look at "No Evidence" and "Insufficient Evidence,"
69 Tex. L. Rev. 515, 522 (1991).

 In this case, the trial court implicitly determined that the easement documents were
ambiguous when it permitted extraneous evidence of the parties' intent. See Russell, 919 S.W.2d
at 704; Shar-Alan Oil, 799 S.W.2d at 371 n.2. Because we have determined that appellants are
estopped or have waived their right to complain about the trial court's submission of the right-to-upgrade issue to the jury, we will assume without deciding that the trial court's decision was
correct. We conclude that, viewed in the light most favorable to the LCRA, the record evidence
supports the jury's finding that the LCRA had the right to upgrade its transmission line. The 1943
easement was written as "consisting of such poles, towers, wires and other fixtures and
appurtenances as [the LCRA] now requires and may from time to time hereafter require," and was
granted for the purpose of "constructing and reconstructing, repairing, operating and maintaining
or removing" the electric line. Appellants concede that this language would unambiguously give
the LCRA the right to upgrade. Therefore, the language of the original easement constitutes some
evidence that when the parties contracted in 1966 to continue that easement "in perpetuity," they
intended the LCRA to retain the right to upgrade.

 In addition, Texas courts have upheld similar interpretations of utility easements. 
Knox v. Pioneer Natural Gas Co., 321 S.W.2d 596 (Tex. Civ. App.--El Paso 1959, writ ref'd
n.r.e.), involved the question of whether an easement containing the words "lay, maintain, operate
and remove" gave the appellee the right to replace an eight-inch low pressure pipeline with a
twelve-inch high pressure pipeline capable of transporting an increased quantity of gas. Id. at 598-99. The easement also gave the grantee the right to enter onto the land for the purpose of "making
additions to, improvements on, and repairs to" the pipeline. Id. at 598. The court upheld the
pipeline company's right to upgrade the line, noting: "The grantee is entitled to vary his mode
of enjoying [his rights in the land], and from time to time to avail himself of modern inventions
if by so doing he can more fully exercise and carry out the object for which the way was granted." 
Id. at 601 (quoting 19 Corpus Juris Easements § 219 (1920)). See also Central Power & Light
Co. v. Holloway, 431 S.W.2d 436, 438-39 (Tex. Civ. App.--Corpus Christi 1968, no writ)
(easement "for purposes of constructing, reconstructing, inspecting, patrolling, hanging new wire
on, and maintaining and removing" electric line did not require parties to reinstall new line at
same height as old line); 28A C.J.S. Easements § 160 (1996) ("[A]n express easement can
accommodate modern developments, so long as the use remains consistent with the purpose for
which the right was originally granted, since there is a presumption that advances in technology
are contemplated in the grant of an easement.").

 Although appellants rely heavily on the case of Houston Pipe Line Co. v. Dwyer,
374 S.W.2d 662 (Tex. 1964), we find that case distinguishable. The easement in Dwyer consisted
of a right of way to "lay, maintain, operate, repair and remove" a gas pipeline. Id. at 663. 
However, the parties struck out the words "and remove" and deleted a paragraph in the habendum
clause giving the future right to construct additional pipelines over such lands for additional
consideration. See id. More importantly, the agreement in Dwyer did not locate the easement by
a metes and bounds description. In Lower Colorado River Authority v. Ashby, 530 S.W.2d 628
(Tex. Civ. App.--Austin 1975, writ ref'd n.r.e.), a case factually similar to the instant case, this
Court distinguished Dwyer because the Ashby easement designated by metes and bounds a 100-foot
wide strip of land, while the Dwyer easement provided no metes and bounds description. See
Ashby, 530 S.W.2d at 632. In the present case, the LCRA's easement has always been a forty-foot easement identified by metes and bounds. Therefore, we follow Ashby and hold that Dwyer
is inapplicable to the present case.

 Assuming that the language in the 1967 easement was ambiguous, we believe that
reasonable minds could conclude from the evidence presented that the LCRA had the right to
upgrade the transmission line in the manner accomplished. Appellants' seventh point of error is
overruled.


CONCLUSION

 While the LCRA objected to the submission to the jury of the two questions
regarding its right to upgrade its electric transmission line, appellants did not. Appellants have
thus waived, or are estopped to assert, their right to complain that these were questions of law for
the court that the jury was not entitled to answer. Furthermore, we find that the evidence is
legally sufficient to support the jury's verdict. We therefore affirm the trial-court judgment.



 

 Bea Ann Smith, Justice

Before Justices Jones, B. A. Smith and Yeakel

Affirmed

Filed: February 11, 1999

Do Not Publish

1. Vernon Voges died on June 24, 1997, the same day the trial court rendered judgment on the
jury verdict in this case. This appeal is pursued in his name under Tex. R. App. P. 7.1(a)(1).
2. A second project, construction of which is not scheduled to begin for several years, is the
addition of an additional 138kV electric circuit on the new concrete poles. The LCRA determined
that an easement of 100 feet will be needed for this project. In its suit against appellants, the
LCRA asked the jury to award compensation to appellants for the additional easement required
by the future project, which the jury did. That amount is not at issue in this appeal.
3. The Voges appellants own properties along a small stretch of U.S. Highway 95, which runs
between Bastrop and Elgin, in the following amounts: Augusta Voges-64.15 acres; Kevin Voges-2.63 acres within Augusta Voges' property; Tommy Townsend-140 acres; and Arnold Goertz-34.5
acres.
4. The 1967 easement granted the LCRA:


[A] perpetual and assignable easement and right-of-way to place, construct, maintain,
operate, repair, replace, patrol and remove an electric transmission line upon and
over the following described property in the County of Bastrop, State of Texas, to-wit:


A 40 foot wide easement and right-of-way being 20 feet on either side of the
centerline of the main [LCRA] electric transmission line.
5. Appellants Mary Harris Ray and John Ray own two small lots located within the Lake
Bastrop Acres, Inc. subdivision, which is owned in part by appellants Sheri and Kenneth Tuck. 
We will adopt the parties' nomenclature and refer to these four individuals, along with appellant
Lake Bastrop Acres, Inc., as the "LBA appellants."
6. Because appellants abandoned their fraud and trespass claims at trial, the only issues before
the jury were: (1) the extent of the LCRA's easement rights pertaining to the upgrade from 69kV
to 138kV, and (2) the amount of damages due appellants for the LCRA's taking of additional
easement rights pertaining to the future addition of a second 138kV line.
7. The LCRA objected to the submission of the two right-to-upgrade questions on the grounds
that they presented questions of law for the trial court; the LCRA also moved for an instructed
verdict on the same basis, which the trial court denied. While appellants did object to the
submission of questions two and three, their sole basis for objecting was that the questions did not
explicitly state that the right to upgrade should be restricted to the rights included in the 1967
easement (for the Voges appellants' properties) or on the public utility easement (for the LBA
appellants' properties). This objection forms the basis of appellants' fifth issue on appeal.
8. See Casteel-Diebolt v. Diebolt, 912 S.W.2d 302, 304 (Tex. App.--Houston [14th Dist.]
1995, no writ) (appellant estopped from complaining of defective jury charge after agreeing to jury
charge as submitted); Marino v. Hartsfield, 877 S.W.2d 508, 513 (Tex. App.--Beaumont 1994,
writ denied) (appellants could not complain of jury charge that they offered and trial court
submitted) (citing S & A Beverage Co. v. DeRouen, 753 S.W.2d 507, 510 (Tex. App.--Beaumont
1988, writ denied)); see also Litton, 668 S.W.2d at 321-22 (by asking trial court to render
judgment on actual damages found by jury, party could not bring factual or legal sufficiency
challenge to evidence of actual damages).
9. See Tex. R. Civ. P. 274; State Dep't of Highways & Pub. Transp. v. Payne, 838 S.W.2d
235, 241 (Tex. 1992) (op. on reh'g); University of Tex. Sys. v. Courtney, 946 S.W.2d 464, 470
(Tex. App.--Fort Worth 1997, writ denied); Russell v. City of Bryan, 919 S.W.2d 698, 703 (Tex.
App.--Houston [14th Dist.] 1996, writ denied) (by agreeing to submit issue of intent to jury, party
waived any complaint as to lack of pleading or trial court finding of ambiguity).

10. We note that the issue of whether the 1967 easement language gave the LCRA the right to
upgrade as a matter of law is a distinct question from whether the evidence is legally sufficient to
support the jury's finding that the LCRA did have the right to upgrade. Only the latter is at issue
here because, as noted above, appellants waived their right to complain that the interpretation of
the easement language was a question of law for the court.

 Vernon Voges died on June 24, 1997, the same day the trial court rendered judgment on the
jury verdict in this case. This appeal is pursued in his name under Tex. R. App. P. 7.1(a)(1).
2. A second project, construction of which is not scheduled to begin for several years, is the
addition of an additional 138kV electric circuit on the new concrete poles. The LCRA determined
that an easement of 100 feet will be needed for this project. In its suit against appellants, the
LCRA asked the jury to award compensation to appellants for the additional easement required
by the future project, which the jury did. That amount is not at issue in this appeal.
3. The Voges appellants own properties along a small stretch of U.S. Highway 95, which runs
between Bastrop and Elgin, in the following amounts: Augusta Voges-64.15 acres; Kevin Voges-2.63 acres within Augusta Voges' property; Tommy Townsend-140 acres; and Arnold Goertz-34.5
acres.
4. The 1967 easement granted the LCRA: