

# IN THE
# TENTH COURT OF APPEALS

### No. 10-21-00130-CV

CURTIS CAPPS,

                                                    Appellant

 v.

CITY OF BRYAN, TEXAS A TEXAS HOME RULE MUNICIPAL
CORPORATION D/B/A BRYAN TEXAS UTILITIES,

                                                    Appellee

From the 361st District Court
Brazos County, Texas
Trial Court No. 19-000070-CV-361

## OPINION

Curtis Capps appeals from an interlocutory judgment that granted a plea to the

jurisdiction in part filed by the City of Bryan, Texas, a home rule municipal corporation

d/b/a Bryan Texas Utilities. Capps complains that the trial court erred by finding that he

did not have standing to bring his claims against the City for inverse condemnation

relating to the construction of an electrical power line across property he owned. Because

we find Capps has standing to bring an inverse condemnation proceeding based on allegations of a taking and damages to property he owned in 2015, we reverse the trial court's order and remand this proceeding to the trial court.

In 1961, the City obtained an easement from Frank Foster, Jr. for "constructing, operating and maintaining an electric transmission or distribution line" across a 40-acre tract of land owned in part by Foster, Jr. Foster, Jr. is alleged to have owned an undivided one-fourth interest in the property as an heir of Frank Foster, Sr., who was apparently the record owner at that time.[1] The City constructed a 69kV transmission line across the property. The Right-of-Way easement, which expressly gave the City "the right to ingress and egress over the Grantor's and adjacent lands to or from said right of way for the purpose of constructing, improving, reconstructing, repairing, inspecting, patrolling, maintaining, and removing said line and appurtenances; the right to relocate said line in the same relative position to any adjacent road if and as widened in the future…"

The City continuously used the 69kV transmission line constructed in 1961 until the City decided to upgrade the line with a 138kV line. The 138kV line required new concrete poles which were larger than the poles used for the 69kV line and the poles would be located in different places on Capps's property. The 69kV line was entirely demolished. The new line did not exactly follow the location of the prior easement, and

---

[1] Frank Foster, Sr. was deceased at the time the 1961 easement was created but no administration of his estate had occurred, thus the record title remained in his name. Frank Foster, Sr.'s date of death is not clear from the record, but he is alleged to have passed away intestate prior to 1900, leaving his four children as heirs.

crossed areas that were outside of the 1961 easement. When constructing the 138kV line in 2015, the City entered into an additional easement agreement with Ricky and Annie Scheffler, who were the alleged successors in interest to Frank Foster, Jr. The agreement with the Schefflers included an extra 20 feet that ran along the original 60-foot-wide easement across the property. The City paid the Schefflers for the taking of the additional easement.[2]

Capps had purchased a 3/4 undivided interest in the property in June of 2014. He then purchased the remaining 1/4 interest from the Schefflers in March of 2015, prior to the completion of the 138kV line. When Capps saw that the City was on the property constructing the 138kV line, he had a survey of his property prepared which discovered that the new line did not follow the centerline of the 69kV right-of-way.

Capps filed this proceeding and asserted a claim for inverse condemnation for the taking of the easement for the new transmission line. The City filed a plea to the jurisdiction and alleged that Capps did not have standing to bring the claim as to the initial 69kV line erected in 1961 or the subsequent upgrade of the line. The trial court granted the City's plea in part and specifically found that Capps did not have standing "related to the Defendant's alleged taking of the 60' electric transmission line easement … and the Defendant's continued use, operation, and maintenance thereafter for an electric

---

[2] The origin of the Schefflers' title and the impact of the agreement with them is not important to the issue of Capps's standing, which is the only issue in this appeal.

transmission line, including the 2015 upgrade from a 69kV electric transmission line to a 138kV electric transmission line." The trial court found that Capps does have standing to bring the claims "regarding the Defendant's failure to take an additional 20' easement and the resulting alleged overhang of the lines outside of the original 60' easement."

Capps filed this interlocutory appeal, challenging the trial court's finding that he does not have standing to bring an inverse condemnation claim as to the 138kV electric transmission line in its entirety.

**JURISDICTION**

A trial court must have jurisdiction to adjudicate the subject matter of a cause of action. *Tex. Dep't of Parks & Wildlife v. Miranda*, 133 S.W.3d 217, 225-28 (Tex. 2004). Whether the trial court possesses jurisdiction is a question of law that is reviewed de novo. *See id.* at 228. Subject matter jurisdiction cannot be waived and may be raised at any time. *See Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 445 (Tex. 1993). If a plea to the jurisdiction challenges the pleadings, the court must determine whether the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction. *See Miranda*, 133 S.W.3d at 227. "If the pleadings affirmatively negate the existence of jurisdiction, then a plea to the jurisdiction may be granted without allowing the plaintiffs an opportunity to amend." *Id.*

If the plea to the jurisdiction challenges the existence of jurisdictional facts, "we consider relevant evidence submitted by the parties to determine if a fact issue exists."

*Suarez v. City of Tex. City*, 465 S.W.3d 623, 632-33 (Tex. 2015) (*citing Miranda*, 133 S.W.3d at 227). "We take as true all evidence favorable to the nonmovant, indulge every reasonable inference, and resolve any doubts in the nonmovant's favor." *Suarez*, 465 S.W.3d at 633 (*citing Miranda*, 133 S.W.3d at 227). "If the evidence creates a fact question regarding jurisdiction, the plea must be denied pending resolution of the fact issue by the fact finder." *Id*. (*citing Miranda*, 133 S.W.3d at 227-28). "If the evidence fails to raise a question of fact, however, the plea to the jurisdiction must be granted as a matter of law." *Id.* (*citing Miranda*, 133 S.W.3d at 228).

Courts do not possess subject matter jurisdiction over cases brought by parties without standing. *See Tex. Ass'n of Bus.*, 852 S.W.2d at 444. To have standing to sue for inverse condemnation, the plaintiff must have a property interest in the property at the time of the alleged taking. *See Tex. S. Univ. v. State St. Bank & Trust Co.*, 212 S.W.3d 893, 903-04 (Tex. App.—Houston [1st Dist.] 2007, pet. denied). Thus, to recover under the constitutional takings clause, a litigant must first identify an ownership interest in the property taken. *See Tex. DOT & Edinburg v. A.P.I. Pipe & Supply, LLC*, 397 S.W.3d 162, 166 (Tex. 2013); *see also* TEX. CONST. art. I, § 17; *Tex. Dep't of Transp. v. City of Sunset Valley*, 146 S.W.3d 637, 644 (Tex. 2004).

Capps's petition alleges that the installation of the 138kV line in 2015, when he did own the full interest in the property, constituted a new taking and that the 69kV line was abandoned by the City when it was removed. The City filed a plea to the jurisdiction

alleging that Capps did not have standing to contest the 1961 easement because he did not own any interest in the property at that time.

Capps argues that the trial court's determination is not merely a standing determination, but a determination of the merits of the proceeding outside the scope of the standing determination. The evidence presented includes the original easement, other deeds establishing the ownership of the property, deposition transcripts, and a map created to show the original easement and transmission line as well as the new transmission line's location. The new line appears to run along the edge of the existing easement rather than along the centerline where the original line was located.

The trial court's determination that Capps did not have standing required the trial court to determine that the new transmission line was entirely within the scope of the original easement, which was only executed by one of the multiple owners of the property. Capps argues that this conflates the evidence required for standing with an ultimate determination as to the merits of the proceeding, which is improper in a plea to the jurisdiction.

"A plea to the jurisdiction is a dilatory plea, the purpose of which is to defeat a cause of action without regard to whether the claims asserted have merit." *Bland Indep. Sch. Dist. v. Blue*, 34 S.W.3d 547, 554 (Tex. 2000). Furthermore, "[t]he purpose of a dilatory plea is not to force the plaintiffs to preview their case on the merits but to establish a reason why the merits of the plaintiffs' claims should never be reached." *Id*.

The City argues that because Capps owned no interest in the property in 1961 when the original easement was granted, Capps does not have standing to challenge that easement, and that it is proper to consider evidence provided in support of the plea even if that evidence implicates the merits of the case in addition to subject matter jurisdiction. *See Mission Consol. Indep. Sch. Dist. v. Garcia*, 372 S.W.3d 629, 635 (Tex. 2012). The City further contends that the evidence conclusively established that the taking occurred in 1961 with the construction of the 69kV transmission line, and, in reliance on *Lower Colorado River Authority v. Ashby*, any upgrades constituted "mere use of the easement" by the City. *See Lower Colorado River Auth. v. Ashby*, 530 S.W.2d 628, 632-33 (Tex. Civ. App.—Austin 1975, writ ref'd n.r.e.) (trial court's finding that the easement was abandoned was reversed and held that the upgrade of a transmission line with new towers was a use of the current easement, not an abandonment and a new taking.).

The City's arguments about the 1961 easement and Capps's standing to complain about it fundamentally miss the mark as it relates to Capps's arguments. Capps owned an interest in the property at the time of the 2015 construction of the 138kV transmission line. That is all the interest necessary to give him standing to litigate an inverse condemnation with the City over the compensation due for that project. The entirety of the dispute is about the scope and damages to property Capps owned for the 2015 taking. The extent to which the 1961 taking might limit the scope and damages for the 2015 taking will be issues to be addressed in the trial court on the merits, but by his ownership at the

time of the 2015 taking Capps has the requisite standing to litigate those issues.

The City concedes that Capps has standing to assert an inverse condemnation claim for the taking that transpired outside of the bounds of the 1961 easement as to which the trial court denied the City's plea to the jurisdiction. But Capps also has standing for a merits determination of whether the City abandoned the 1961 easement and if not whether their current use for the 138kV transmission line exceeds the scope of the permitted use of the 1961 easement for the 69kV transmission line. Without regard to the merits we note that Capps may ultimately lose, but he is entitled to lose on the merits, not because he does not have standing to argue his claim for a governmental taking of his property.

Here, Capps has alleged and produced evidence that the taking occurred when the City constructed the 138kV transmission line in 2015, and at that time he owned an interest in the property. Notwithstanding Capps's allegations and evidence, the trial court made a determination that the taking of the property transpired in 1961 with the easement granted by Frank Foster, Jr., who held only a one-fourth undivided interest in the property. We find that the determination that the taking that formed the basis for the inverse condemnation proceeding occurred in 1961 was improper because the allegations and jurisdictional evidence presented by Capps were sufficient to establish that he had standing to assert an unlawful taking of his property in 2015. We sustain Capps's sole issue.

CONCLUSION

Having found that the trial court erred by granting the plea to the jurisdiction on the basis that Capps did not have standing to proceed, we reverse that portion of the trial court's ruling and remand this proceeding to the trial court.


TOM GRAY
Chief Justice

Before Chief Justice Gray,
  Justice Johnson, and
  Justice Wright[3]
(Justice Johnson dissents)
Reversed and remanded
Opinion delivered and filed January 11, 2024
[CV06]



---

[3] The Honorable Jim R. Wright, Senior Chief Justice (Retired) of the Eleventh Court of Appeals, sitting by assignment of the Chief Justice of the Texas Supreme Court. *See* TEX. GOV'T CODE §§ 74.003, 75.002, 75.003.