# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

## NO. 03-06-00484-CV

**August Meduna, Jr. and Gary Meduna, Sr. Appellants**

**v.**

**Ruth Holder, Appellee**

### FROM THE COUNTY COURT AT LAW OF BASTROP COUNTY,
### NO. G33A AND 8747, HONORABLE BENTON ESKEW, JUDGE PRESIDING

## M E M O R A N D U M   O P I N I O N

This appeal arises from a probate dispute among siblings concerning their respective interests in certain real property owned by their late parents. Appellants, brothers August ("Gus") Meduna, Jr. and Gary Meduna, Sr. appeal a judgment voiding a 1997 gift deed under which they claimed interests in the property and awarding damages to their sister, appellee Ruth Holder, based on jury findings that the brothers tortiously interfered with her inheritance. Appellants bring forward three issues on appeal. They first contend that the trial court erred in granting partial summary judgment that their father did not effect a valid delivery of the deed. Relatedly, appellants urge that the trial court abused its discretion at trial in excluding their evidence relating to their father's delivery of the deed, which they sought to offer in defense of Ruth's tortious interference claims, and in refusing to submit the delivery issue to the jury. Appellants also contend that the evidence is legally and factually insufficient to support the award of damages for tortious interference. We

will affirm the trial court's judgment that the father did not deliver the deed and that the deed is void in its entirety. However, because we conclude there was legally insufficient evidence to support the award of damages, we must reverse and render judgment that Ruth take nothing on her tortious interference claims.

## BACKGROUND

The parties are the three children of the late August Meduna, Sr., who died in November 1998, and Minnie Rosanky Meduna, who died in 2003. The present proceeding is the third appeal to this Court that has arisen from an ongoing series of disputes among the parties that originated in events following August's death.[1] The nature and history of these disputes are detailed in the Court's prior opinions.[2] To summarize, after August died, the parties located, in August's locked car, a notebook containing various documents that included a gift deed and a joint will, both of which August and Minnie had executed before a notary on June 17, 1997. Under the terms of the gift deed, August Sr. and Minnie, reserving life estates for themselves, granted life estates in separate, equal-sized tracts of their 200-acre Bastrop County farm to each of their three children, with the remainders ultimately passing to Gary's heirs.[3] The record reflects that both Gary and Ruth,

---

[1] To avoid confusion with the common surname, we will refer to the parties by their first names, as have the parties in their briefs. We will also use "appellants" to identify Gus and Gary.

[2] *Meduna v. Holder*, No. 03-02-00781-CV, 2003 Tex. App. LEXIS 10568 (Tex. App.—Austin Dec. 18, 2003, no pet.) (mem. op.) (*Meduna II*); *Meduna v. Holder*, No. 03-02-00067-CV, 2003 Tex. App. LEXIS 284 (Tex. App.—Austin Jan. 16, 2003, no pet.) (mem. op.).

[3] Apparently the property had been surveyed into the three equal tracts several years earlier.

but not Gus, had children and potential heirs.[4] The joint will devised to Gus and Gary each an undivided one-half interest "in all of our farm equipment, tractors and tools," with "any of said property still remaining" being divided into three equal shares that were each devised to a child in fee simple.[5] Litigation soon arose between appellants and Ruth concerning the validity of the gift deed, with appellants seeking a declaration of the deed's validity and Ruth contending that it was invalid.

Although appellants apparently filed suit first seeking a determination of the deed's validity, this proceeding arises from relief Ruth—who was appointed Minnie's guardian in 2001—sought in the guardianship proceeding. Ruth alleged, among other things, that "Grantors never delivered the Deed of Gift to the purported donees and the gift is therefore incomplete and the deed void," that Minnie was incompetent to execute the deed, and that the deed was void "as a patently unreasonable restraint on alienation." Following a non-evidentiary hearing, the trial court ruled that the deed was void under the rule against perpetuities and as an unreasonable restraint on alienation that was incapable of reformation. Gus appealed. This Court affirmed the trial court's determination that the deed violated the rule against perpetuities and imposed an unreasonable restraint against alienation, but reversed its holding that the deed could not be reformed and was void in its entirety.[6] The Court remanded "for a full hearing on all issues challenging the deed's validity"

---

[4] Ruth also asserts in her brief that, with August and Minnie's consent, her son had built and lived on the tract of the property identified with her for twenty years, and that Gus had done the same on the tract identified with him.

[5] The record reflects that August or Minnie owned additional real property, as well as financial assets.

[6] *Meduna II*, 2003 Tex. App. LEXIS 10568, at *30-*31.

3

and further directed that "if the trial court determines that the deed is valid, the court must then strike the unreasonable restraint and reform the deed to comply with the rule against perpetuities in light of the grantor's intentions."[7]

On remand, Ruth sought summary judgment under civil procedure rule 166a(i), contending there was no evidence that the deed was delivered or accepted.[8] The trial court granted Ruth's motion "in all things germane to August Meduna, Sr." but denied it "in respect to Minnie Meduna." The case proceeded to trial. The parties litigated several disputed factual matters that are reflected in the jury charge. The trial court submitted issues regarding Minnie's capacity at the time she executed the deed and, conditioned on a finding that Minnie did not lack capacity, whether Minnie had delivered the deed, whether Minnie had lacked mental capacity at the time she delivered it, and whether Gus or Gary had exercised undue influence on Minnie to deliver the deed. The court also submitted issues on whether Gus or Gary had tortiously interfered with Ruth's inheritance—"by undue influence, fraud, or other wrongful means, intentionally prevent[ing] another from receiving an inheritance or gift that she would otherwise have received." Predicated on an affirmative finding as to Gus, Gary, or both, the jury was asked to award damages for such tortious interference and to determine whether the tortious interference of Gus, Gary, or both had been done with malice. Finally, the trial court submitted an issue as to whether the 1997 gift deed found in August's car had included a property description attachment. The jury found that Minnie had lacked

---

[7] *Id*. at *31.

[8] Ruth's summary-judgment motion is not in the record. However, appellants' response to the motion is in the record. In it, they acknowledged that "Movant bases her Motion on the claim that there is no evidence of delivery to or acceptance by the donees of the Deed."

mental capacity at the time she executed the deed and, thus, did not reach the other issues bearing on the validity of her conveyance. It found that both Gus and Gary had tortiously interfered with Ruth's inheritance, awarded Ruth $20,000 in actual damages from each, but also found that neither brother had acted with malice. The jury also found that the deed found in the car had included a property description attachment. The trial court rendered judgment based on its prior partial summary judgment[9] and the jury's verdict, declaring the gift deed entirely void and awarding Ruth the damages found by the jury. Gus and Gary subsequently filed this appeal.

## DISCUSSION

**Delivery**

In their first issue, Gus and Gary urge that the district court erred in granting the partial summary judgment as to August's delivery of the June 17, 1997 gift deed. They seek a reversal and remand of the issue for trial. Appellants acknowledge that, because they are not challenging the trial court's judgment that the gift deed was void as a conveyance of Minnie's interests, the reversal they seek would potentially impact only the siblings' respective interests in the undivided ½ share in the property that August could have conveyed through the deed. Conversely, if we affirm the partial summary judgment, appellants concede that such disposition would also foreclose their second issue, in which they complain of the trial court's exclusion of evidence and refusal to submit a jury issue concerning whether August delivered the deed.

---

[9] The final judgment recited that "this Court entered an Order granting summary judgment as to Mr. Meduna, Sr., effectively holding that the June 17, 1997, Gift Deed . . . was ineffective for lack of delivery by August Meduna, Sr."

5

We review the trial court's partial summary judgment de novo. *Valence Operating Co. v. Dorsett*, 164 S.W.3d 656, 661 (Tex. 2005). Ruth sought summary judgment under the "no evidence" standard in civil procedure rule 166a(i). A no-evidence motion for summary judgment must be granted if, after an adequate time for discovery, (1) the moving party asserts that there is no evidence of one or more essential elements of a claim or defense on which an adverse party would have the burden of proof at trial, and (2) the nonmovant fails to produce more than a scintilla of summary-judgment evidence raising a genuine issue of material fact on those elements. Tex. R. Civ. P. 166a(i). A no-evidence summary judgment is essentially a directed verdict granted before trial, to which we apply a legal-sufficiency standard of review. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 750-51 (Tex. 2003); *Perdue v. Patten Corp.*, 142 S.W.3d 596, 603 (Tex. App.—Austin 2004, no pet.). A no-evidence summary judgment will be sustained when: (1) there is a complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence offered to prove a vital fact is no more than a scintilla; or (4) the evidence conclusively establishes the opposite of a vital fact. *King Ranch*, 118 S.W.3d at 751. We view the evidence in the light most favorable to the nonmovant, disregarding all contrary evidence and inferences. *Id*. (citing *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). More than a scintilla of supporting evidence exists if the evidence would allow reasonable and fair-minded people to differ in their conclusions. *Id*. "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id*. (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

For a conveyance by deed to be valid, there must be "delivery" of the deed. Tex. Prop. Code Ann. § 5.021 (West 2003); *Steffian v. Milmo Nat'l Bank*, 6 S.W. 823, 824 (Tex. 1888) ("To take effect, it is quite as necessary that [the deed] should be delivered as that it should be signed."). "While the question of whether there has in fact been a delivery of a deed is one for the trier of facts; the question of what constitutes a delivery [i.e., the legal effect of any facts relating to delivery] is one of law." *Ragland v. Kelner*, 221 S.W.2d 357, 359 (Tex. 1949). There are two essential elements to delivery: (1) the grantor's relinquishment of control over the deed to the grantee or a third party; (2) with contemporaneous intent that the deed is to take effect as a conveyance. *Id.* ("A valid delivery of a deed may be made to a third person who is not an agent of the vendee, and this is true even though the grantee may not be aware of its execution or delivery . . . . The test . . . is whether or not the grantor parted with all dominion and control over the instrument at the time he delivered it to the third person, with intent at the very time of delivery that it take effect as a conveyance."); *Steffian*, 6 S.W. at 824 ("The instrument must not only be placed within the control of the grantee, but this must be done by the grantor with the intent that it shall become operative as a conveyance."). Relatedly, delivery also requires that the grantee accept the deed. *See Pucket v. Hoover*, 202 S.W.2d 209, 211 (Tex. 1947).

Although the filing of a deed for record creates a prima facie presumption of delivery and acceptance, the fact that a deed has or has not been filed is not necessarily controlling. *See Stephens County Museum, Inc. v. Swenson*, 517 S.W.2d 257, 261-62 (Tex. 1974). Similarly, delivery does not necessarily require manual physical transfer of the deed to the grantee or his agent, or even that a deed be placed beyond a grantor's physical possession. *See Gilbert v. McSpadden*,

7

91 S.W.2d 889, 890 (Tex. Civ. App.—Waco 1936, writ ref'd); *Hart v. Rogers*, 527 S.W.2d 230, 234 (Tex. Civ. App.—Eastland1975, writ ref'd n.r.e.). To the contrary, no particular form of words or action is required to constitute delivery, and delivery is often said to turn on the grantor's intent as determined by examining all of the facts and circumstances preceding, attending, and following the execution of the instrument. *See Swenson*, 517 S.W.2d at 262. Nonetheless, it remains that the grantor must relinquish dominion and control over the deed. *Gilbert*, 91 S.W.2d at 890 ("While delivery may be by words or acts, or both combined, and manual transmission of the deed from the grantor to the grantee is not required, it is an indispensable feature of every delivery of a deed, whether absolute or conditional, that there be a parting with the possession of it, and with all power and control over it, by the grantor, for the benefit of the grantee at the time of delivery."); *Hart*, 527 S.W.2d at 234 ("[I]t is essential that the grantor relinquish dominion and control over the deed."). Absent such relinquishment of dominion and control over the deed, the question of the grantor's donative intent "becomes immaterial." *Gilbert*, 91 S.W.2d at 890.

*Gilbert* illustrates the strictness of this requirement even in the face of evidence of a grantor's intent to convey property through a deed that he had previously executed. In 1927, Gilbert executed two deeds conveying separate tracts of properties to his two daughters, Scroggins and McSpadden. Gilbert kept the deeds in his possession and continued to exercise dominion over the land. In 1931, he took the deeds from his bank box and traveled to the home of Scroggins for "the avowed purpose of delivering the deeds to her to be recorded." *Id*. at 889. Gilbert retired for the night, and was found dead in bed the following morning. Shortly thereafter, the children found the deeds in Gilbert's suitcase and had them recorded. The administratrix of Gilbert's estate filed an

8

action to recover the land for his estate, claiming that Gilbert had never delivered the deeds. Although the trial court ruled in favor of the children, the court of appeals reversed. *Id*. at 890. It reasoned:

> The dominion over the instrument must pass from the grantor with the intent that it shall pass to the grantee, if the latter will accept it. And where the proof fails to show that the grantor did any act by which he parted with the possession of the deed for the benefit of the grantee, the question of intent becomes immaterial. In other words, delivery may be effected by any act or word manifesting an unequivocal intention to surrender the instrument so as to deprive the grantor of all authority over it or of the right of recalling it; but if he does not evidence an intention to part presently and unconditionally with the deed, there is no delivery. * * * And while the rule that the grantor must part with all dominion and control over his deed does not mean that he must put it out of his physical power to procure repossession of it, nevertheless, if the deed remains within the grantor's control and liable to be recalled, there is, according to almost unanimous authority, no delivery, notwithstanding that he has parted with its immediate possession. * * * In the case at bar there was possibly an intention to deliver the deed at some date in the future, but the grantor retained possession and control of it until his death, without having evidenced an intention that it should presently become effective. There was, therefore, no such delivery as to validate the conveyance.

*Id. See also Cecil v. Smith*, 821 S.W.2d 375, 377-78 (Tex. App.—Tyler 1991, no writ) (no delivery when mother had informed son that she had deeded property to him and instructed son to hide envelope containing executed deed in her home; although son briefly had possession, "the possession and control of the deed was not given over to appellee"); *Unsell v. Federal Land Bank of Houston*, 138 S.W.2d 305, 307-09 (Tex. Civ. App.—Texarkana 1940, writ dism'd by agr.) (executed deed found in decedent's safe deposit box was never delivered but had remained within decedent's "exclusive possession and control during his lifetime").

9

In response to Ruth's summary-judgment motion, Gus and Gary attached excerpts from their depositions that they contend raise a fact issue as to whether August effected delivery of the June 17, 1997 gift deed to Gary.[10] Gary testified that, approximately one week before August's death, August told him about the existence of the deed and will and where they were located—in a notebook on the front seat of August's car. At the time, August was in the hospital and, according to Gary, was adamant that he be allowed to go to the county courthouse in Bastrop and file the deed, but was prohibited from doing so by his doctor.[11] In this context, Gary testified—indulging

---

[10] August's delivery of the deed to Gary alone would suffice as delivery to the other grantees. *See Minor v. Powers*, 26 S.W. 1071, 1073 (Tex. 1894).

[11]

Q: Did – did anything about the recording of the deed come up in conversations with your dad?

A: Well, this is all about the same time where he was telling me about the executor and that there's papers in his car and he – how I should handle it.

Q: When your father was in the hospital, was he trying to do anything with regard to the deed?

A: Well, every day . . . he'd get out of bed and want to go to Bastrop every day, not once a day, but 50 times a day.

Q: And what did he want to do in Bastrop?

A: File the deed.

Q: Okay. And how – how do you know that's what he wanted to do?

A: That's what he wanted to do. . . . Wasn't much doubt about it. . . . I mean, he was determined – I mean, not once a day – I don't know – a bunch of times every day and – you know – he couldn't go. . . . Because his doctor said he was sick.

Q: All right. But – so did he ask the doctor?

10

A:     Yeah.

Q:     Who else did he ask about going to Bastrop?

A:     Probably everybody that came in there.

. . . .

Q:     Your father was uncomfortable in the Hospital, he wanted out, didn't he?

A:     He wanted out, to go take care of business.

Q:     All right. And that is something you said that he said to a number of people?

A      Well, yeah.

. . . .

Q:     And he – what he wanted to do was take care of business?

A:     Yeah.

Q:     Okay. And now you have not very little doubt as to what he meant when he said, take care of business?

A:     No.

. . . .

Q:     What do you remember him saying?

A:     He wanted to go to La Grange and get some money out of the bank.

Q:     Okay.

A:     And he wanted to go to Bastrop and file those papers.

Q:     Did he say he wanted to go to Bastrop in order to file papers?

A:     Yeah.

11

inferences in favor of appellants, as the non-movants—that August confided in him regarding the existence and location of the deed and will (including the fact that Gary had been named an executor in the will) and told him to file the deed of record and/or physically convey it to his siblings.[12] Emphasizing that delivery does not categorically require that grantees obtain physical possession of the deed, *see Ragland*, 221 S.W.2d at 359; *Gilbert*, 91 S.W.2d at 890, appellants urge that August's actions in telling Gary where the deed was located and to file or distribute it were sufficient relinquishment of dominion and control over the instrument to constitute delivery.[13]

Relying heavily on *Gilbert*, Ruth counters that "at most Gary's testimony evidenced an expression of August's intent to file the deed (or rather, a deed) in the future (which he did not), or an intent that Gary file it (which he did not)," and falls short of raising a fact issue regarding the

---

[12]    Q:    I thought I heard you acknowledging to your mother [on an audiotape the brothers had made of Minnie after August's death] that your dad did not complete the deal by connecting the property description to the deed and passing the deed out to anybody. Is that – did I hear that right?

       A:    Well, he – he personally wasn't able to go and physically do it himself. That's why he told me to.

[13] Appellants place considerable emphasis on statements apparently made by the trial court in a September 28, 2005 letter to the parties following the summary-judgment hearing, which they characterize as manifesting erroneous reasoning. They have attached a copy of this letter to their brief. Even assuming appellants correctly characterize the trial court's statements, this letter was not included in the clerk's record. The sole judicial pronouncements in the clerk's record regarding the summary-judgment motion are (1) an October 2005 order stating that the trial court was granting the motion in part as to August Meduna following its consideration of an initial hearing, additional briefing it had requested, and motions for rehearing and reconsideration; and (2) the final judgment. In any event, even assuming the letter was properly before us, the sole legal conclusions relevant to our review are those stated in the summary-judgment motion and response. *See IKB Indus. (Nigeria) Ltd. v. Pro-Line Corp.*, 938 S.W.2d 440, 441 (Tex. 1997).

sort of present relinquishment of dominion or control required for delivery.[14] We must agree that the trial court did not err in granting summary judgment on this record.

Viewed in the light most favorable to appellants, their summary-judgment evidence raises a fact issue as to whether (1) August informed Gary that the deed was in a notebook on the front seat of his car, where it was later recovered following August's death; (2) August intended or desired the deed to be recorded; and (3) August instructed Gary to file the deed and/or physically distribute it among his siblings. While perhaps probative of August's donative intent, this evidence falls short of raising a fact issue as to whether August transferred dominion and control over the deed to Gary. It is undisputed that the notebook and deed remained in August's locked car until the occasion after August's death when the siblings gathered while Gus unlocked the car and the notebook was recovered. Until then, there is no evidence that Gary—despite claiming to have been aware of the deed's location and his father's desire that he file it—did not exercise control over the deed. Nor did his siblings do so. Further, there is no summary-judgment proof from which it can be inferred that Gary had access to the deed while it was locked in August's vehicle, such that August's alleged directives to Gary could reflect an unequivocal transfer of control to Gary with the

---

[14] Ruth also stresses that she objected to this summary-judgment evidence as inadmissible under the dead man's statute, hearsay and other grounds. *See* Tex. R. Evid. 601(b), 802. The record does not reflect that the trial court ever ruled on her objections. We need not address the merits of these objections, or whether Ruth has preserved them, because we conclude that appellants have failed to raise a fact issue regarding August's delivery even if the challenged evidence is considered.

Ruth also emphasizes her disagreement with appellants' version of the underlying facts and urges that "the facts and circumstances . . . weigh heavily against the donative intent suggested by the Deed." As she ultimately acknowledges, however, the sole issue before us here is whether there is legally sufficient evidence of August's delivery.

13

contemporaneous intent that the deed take effect as a conveyance. Delivery, again, requires an unequivocal relinquishment of dominion and control over the deed *to* the grantee or a third party. *See Ragland*, 221 S.W.2d at 359; *Steffian*, 6 S.W. at 824. Further, the transfer of dominion and control over the deed must be with contemporaneous intent that the deed take effect as a conveyance. *See Ragland*, 221 S.W.2d at 359; *Steffian*, 6 S.W. at 824. The mere facts that Gary knew the deed's location or even that his father intended that he retrieve or receive it at some point is not enough. *See Cecil*, 821 S.W.2d at 377-78.[15]

Although they did not present any such evidence with their summary-judgment response, appellants have subsequently pointed to trial testimony to the effect that Gus had keys to August's vehicle. From these asserted facts alone, they urge us to infer that "the grantees had control over the deed." Even considering this testimony, we cannot agree that the mere fact Gus or Ruth had access to keys to August's car, without more, provides a basis for reasonably inferring that *Gary* had access to the car, such that August's supposed directives to him represented a transfer of dominion and control over the deed with contemporaneous intent that it take effect as a conveyance. *See City of Keller v. Wilson*, 168 S.W.3d 802, 813 (Tex. 2005); *Schlumberger Well Surveying Corp. v. Nortex Oil & Gas Corp.*, 435 S.W.2d 854, 858 (Tex. 1968) ("[A] vital fact may not be established by piling inference upon inference.").

---

[15] *Gilbert* may also support this proposition. Although the opinion is unclear regarding whether the father ever informed his daughters of his intent to deed the property to them or to deliver the deed to them, it notes that the father executed the deeds in the presence of his wife and later traveled to his daughter's house "for the avowed purpose of delivering the deeds to her to be recorded." *Gilbert v. McSpadden*, 91 S.W.2d 889, 889 (Tex. Civ. App.—Waco 1936, writ ref'd).

We conclude that the trial court did nor err in granting partial summary judgment that August did not effect delivery of the June 17, 1997 gift deed prior to his death. Accordingly, we overrule appellants' first and second issues.

**Damages**

In their third issue, appellants argue there is legally and factually insufficient evidence to support the damages award.[16] We will sustain a legal-sufficiency complaint if the record reveals: (a) the complete absence of a vital fact; (b) the court is barred by rules of law or of evidence from giving weight to the only evidence offered to prove a vital fact; (c) the evidence offered to prove a vital fact is no more than a mere scintilla; or (d) the evidence establishes conclusively the opposite of the vital fact. *City of Keller*, 168 S.W.3d at 810. The ultimate test for legal sufficiency is whether the evidence at trial would enable reasonable and fair-minded people to reach the verdict under review. *See id.* at 827.

When the evidence offered to prove a vital fact is so weak as to do no more than create a mere surmise or suspicion of its existence, the evidence is less than a scintilla and, in legal effect, is no evidence. *See Ford Motor Co. v. Ridgway*, 135 S.W.3d 598, 601 (Tex. 2004). But more than a scintilla of evidence exists if the evidence rises to a level that would enable reasonable and fair-minded people to differ in their conclusions. *Id*. We review the evidence in the light favorable to the verdict, crediting favorable evidence if reasonable jurors could and disregarding contrary evidence unless reasonable jurors could not. *See City of Keller*, 168 S.W.3d at 807.

---

[16] Appellants designated this issue as their fourth issue in their brief, but subsequently conceded their third briefed issue during oral argument.

When reviewing a challenge to the factual sufficiency of the evidence, we must consider, weigh, and examine all of the evidence in the record, both supporting and against the finding, to decide whether the verdict should be set aside. *Plas-Tex, Inc. v. U.S. Steel Corp.*, 772 S.W.2d 442, 445 (Tex. 1989); *Pool v. Ford Motor Co.*, 715 S.W.2d 629, 635 (Tex. 1986). We will set aside the verdict only if the evidence that supports the jury finding is so weak as to be clearly wrong and manifestly unjust. *See Cain v. Bain*, 709 S.W.2d 175, 176 (Tex. 1986). But we may not merely substitute our judgment for that of the jury. *Pool*, 715 S.W.2d at 635. The jury remains the sole judge of witnesses' credibility and the weight to be given their testimony. *Golden Eagle Archery, Inc. v. Jackson*, 116 S.W.3d 757, 761 (Tex. 2003).

On appeal, Ruth argues that her damages award is supported by evidence of the mental anguish she suffered as a result of the tortious interference. The Texas Supreme Court has instructed us that to uphold an award of mental anguish damages, there must be either "'direct evidence of the nature, duration, or severity of [plaintiffs'] anguish'" that establishes "'a substantial disruption in the plaintiffs' daily routine' or other evidence of 'a high degree of mental pain and distress' that is 'more than mere worry, anxiety, vexation, embarrassment, or anger.'" *Saenz v. Fidelity & Guar. Ins. Underwriters*, 925 S.W.2d 607, 614 (Tex. 1996) (quoting *Parkway Co. v. Woodruff*, 901 S.W.2d 434, 444 (Tex. 1995)). Furthermore, in addition to evidence of the existence of compensable mental anguish, "there must also be some evidence to justify the amount awarded." *Id.* Due to "the impossibility of any exact evaluation of mental anguish," juries have discretion in determining the amount of damages, but they "cannot simply pick a number and put it in the blank." *Id.*

16

In *Saenz*, the supreme court overturned an award of mental anguish damages that was awarded to compensate the plaintiff for worry and concern that she suffered as a result of the loss of her lifetime medical benefits. *Id*. The sole mental anguish evidence in that case was the plaintiff's testimony that she "worried . . . a lot" about being unable to pay her medical bills and about possibly losing her home. The court held that the plaintiff's concern over future medical expenses, although "real" and "understandable" did not "rise to the level of compensable mental anguish expenses." *Id*.; *cf. Fifth Club, Inc. v. Ramirez*, 196 S.W.3d 788, 797-98 (Tex. 2006) (assault victim's testimony that he "continued to be depressed, humiliated, non-communicative, unable to sleep and angry, continued to have headaches and nightmares, and that his daily activities and his relationship with his wife and daughter continued to be detrimentally affected almost two years after the incident" was legally sufficient to support mental anguish damages).

The evidence on which Ruth relies as proof of her mental anguish is similar to that in *Saenz*. The sole proof she presented on that issue was her testimony that she felt "betrayed" by her brothers, that she was "very unhappy with them," and that she was "very sad that they would do something like this."[17] Proof of these emotions or sentiments, although perhaps understandable in light of the trial record, are not enough to satisfy the high burden for finding compensable mental anguish. *See id*.; *Parkway*, 901 S.W.2d at 445 (plaintiffs' testimony that they were "upset" and

---

[17] Ruth also testified that she "was hurt" and "sad" about the contents of the June 17, 1997, gift deed "because [her] part would go to Gary instead of [her] children." When asked what happened after she and her brothers found and read the deed, she stated: "Well, I'm not real sure. I was very upset, I know. Gary was very harsh. He slammed the deed on the table, and he said 'That's the way it's going to be.' And I was – really don't know what happened. I was very upset."

17

angry about the flooding of their home did not support mental anguish damages). Accordingly, we must sustain appellants' third issue.

## CONCLUSION

We affirm the portion of the trial court's judgment declaring the June 17, 1997 gift deed entirely void. However, we reverse the damages award and render judgment that Ruth take nothing on her tortious interference claims.

_____

Bob Pemberton, Justice

Before Chief Justice Law, Justices Pemberton and Waldrop

Affirmed in part; Reversed and Rendered in part

Filed: April 30, 2008

18